## DOCKSTADER v. REED.

(Supreme Court, Appellate Division, First Department. November 22, 1907.)

1. INJUNCTION—TEMPORARY INJUNCTION—BREACH OF CONTRACT—UNIQUE SERVICES—EVIDENCE.

Defendant, a singer, because of poor health abandoned a contract which specified that his services were special, unique, and extraordinary; that he could not be replaced, and that in case of breach an injunction might issue to prevent irreparable injury; that he could be discharged by defendant. The contract was the only evidence of unique services and that he could not be replaced, which was quite improbable. *Held*, that a temporary injunction would not issue, since parties cannot agree that courts will exercise their functions against or in favor of themselves; it being for the court to determine whether it will so exercise its powers.

2. SAME—PERSONAL SERVICES—MUTUALITY OF CONTRACT.

While equity will often restrain an actor under contract for exclusive services from performing for another during the period of the contract, an application for such relief is addressed to the sound discretion of the court,

and will not be granted where the party seeking relief is not reciprocally
bound by the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 118.]

3. SAME—RESTRICTIVE COVENANT—PERSONAL SERVICES—SUBSTITUTE.
    Whether equity will enjoin the violation of a restrictive covenant as to
personal services depends largely on whether a sufficient substitute for the
employé can readily be obtained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 118.]

Appeal from Special Term, New York County.

Action by Lew Dockstader against Gus Reed. From an order
granting a temporary injunction, defendant appeals. Order reversed,
and injunction ordered denied.

Argued before PATTERSON, P. J., and INGRAHAM, Mc-
LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles Goldzier, for appellant.

Henry J. Goldsmith, for respondent.

HOUGHTON, J. The plaintiff is the proprietor of a minstrel
troupe, and on the 19th day of March, 1907, the defendant contract-
ed by written agreement with him at a stipulated salary per week
to sing and play until the end of the season of 1909. The defendant
entered upon his employment and continued until September, 1907,
when he abandoned his contract, claiming that his health was such
that he could not continue singing and traveling about the country
and parading the streets in inclement weather. The record contains
an affidavit by his physician that to continue in such work and to
expose himself to varying climate throughout the country would
greatly endanger defendant's health which is not robust. The part
to which defendant was cast in plaintiff's troupe was a bass singer
in a quartet, rendering several songs during the performance. The
court granted an injunction during the pendency of the action, re-
straining the defendant from rendering any services to any other
person than the plaintiff or giving any theatrical performance in
public as an actor.

The contract which the defendant signed is the usual unique one
which theatrical managers often demand from actors which they em-
ploy, and in it the defendant confessed that the services which he
was to render were "special, unique, and extraordinary," and ad-
mitted that he could not be replaced, and agreed that in the event
of its breach the plaintiff would suffer irreparable injury, which
could not be ascertained or estimated in an action at law, and con-
sented that an injunction might be issued against him restraining
him from rendering services for any other person. This confes-
sion and defendant's own estimate of himself is the only proof in
the case that his services were unique and that he could not be re-
placed. The contract gave the plaintiff the right to discharge the
defendant, without recourse, if his services were unsatisfactory, and
also the absolute right of discharge, without cause, upon two weeks'
notice; and it is quite improbable that a bass singer in a minstrel
quartet cannot be found to take defendant's place. Notwithstanding

the agreement of the defendant, we think the facts did not warrant the granting of an injunction. Parties to an agreement cannot contract that courts will exercise their functions against or in favor of themselves. Whether or not a court will so exercise its powers is for the court itself to determine.

While equity will often restrain an actor under contract to perform for one and not to perform for another, or from performing for another during the period of the contract, an application for equitable relief is addressed to the sound discretion of the court, and will not be granted where the party seeking relief is not specifically bound by the contract, so that the obligations are reciprocal and enforceable. Lawrence v. Dixey, 119 App. Div. 295, 104 N. Y. Supp. 516. Whether equity will intervene to restrain by injunction the violation of a restrictive covenant in relation to personal services depends in large measure upon whether a substitute for the employé can readily be obtained, and whether such substitute will substantially answer the purpose of the contract. Strowbridge Lith. Co. v. Crane, 58 Hun, 611, 12 N. Y. Supp. 898. In Shubert v. Angeles, 80 App. Div. 625, 80 N. Y. Supp. 146, an injunction was granted against an actress appearing for a rival house in violation of her contract; but it there appeared that she was engaged by the plaintiff because of her special talent as a mimic of other actresses and actors, and that her part could not be taken by another. The salary agreed to be paid defendant was quite moderate, and indicates that his part was quite ordinary, and manifestly could be easily filled. It is undisputed that he was ill, and that a continuance under the contract with plaintiff would endanger his health and be likely to destroy his voice altogether.

The court below felt constrained to grant the injunction because of the peculiar provision of the agreement. We are of opinion, however, upon all the facts disclosed, that the plaintiff was not entitled to an injunction during the pendency of the action, and that the order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.