### HAMMERSTEIN v. MANN.

(Supreme Court, Appellate Division, First Department. April 8, 1910.)

INJUNCTION (§ 60*)—CONTRACTS FOR PERSONAL SERVICES.

Defendant contracted with plaintiff to receive a stated salary for a specified time for which she agreed to sing in opera a specified number of times each month, and not to sing under any other management, and not to sing without plaintiff's permission in any concerts, churches, or benefits, or charities, or phonographs, and "acknowledging her vocal and dramatic ability to be unique, gives" plaintiff "the right to obtain legal injunction in case she attempts to break or breaks this agreement." In proceedings to restrain defendant from violating her contract, she denied that her services were special, unique, and extraordinary, and that she could not be replaced, and enumerated the rôles in which she had appeared under plaintiff's management and the names of numerous artists who had sung the same parts during the season in the same company. Held, that injunction would not lie; there being no sufficient proof that defendant's services were special or unique.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 117, 118; Dec. Dig. § 60.*]

Appeal from Special Term, New York County.

Action by Oscar Hammerstein against Marguerite Mann, sued herein as Marguerite Sylva. From an order granting an injunction pendente lite, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Nathan Burkan, for appellant.

Dittenhoefer, Gerber & James (I. M. Dittenhoefer, of counsel, and Dudley F. Phelps, on the brief), for respondent.

CLARKE, J.　The plaintiff is an operatic impressario; the defendant, a singer. They entered into a contract for the season of 1909–10, beginning Monday, August 30, 1909, for 31 weeks, by the terms whereof the defendant was to receive a salary of $200 a week for 11 weeks and $250 for 20 weeks. She agreed to sing no less than 14 times a month in her operatic and in such leading rôles as might be given to her by plaintiff, in Italian or French, and which were within the compass and range of her voice, and her repertoire was expressed to be Carmen, Faust, Cavaleria, Pagliacci, etc. She agreed not to sing under any other management, and not to sing without plaintiff's permission "in any concert or churches or benefits or charities or phonographs." She gave to plaintiff the right to renew the contract for the seasons of 1910–11 and 1911–12 at a specified salary, notice of such desire of renewal to be given by plaintiff six weeks before the expiration of each season. The contract also contained the following clause:

"Marguerite Sylva, acknowledging her vocal and dramatic abilities to be unique, gives Oscar Hammerstein the right to obtain legal injunction in case she attempts to break or breaks this agreement."

The complaint alleges that the plaintiff has performed all the conditions of the contract on his part to be performed, and that the defendant rendered services under said contract until the 21st of November, 1909, when, without just cause or provocation, and without any warning to the plaintiff, the defendant abandoned and deserted her said contract, and refused and neglected, and still refuses, to render services for the plaintiff herein, and asked judgment that defendant be enjoined and restrained from rendering services to or for any other person, company, or corporation, or from singing or performing, until the expiration of the term mentioned in the contract.

Notwithstanding the fact that in the contract defendant acknowledged her vocal and dramatic abilities to be unique, and gave the right to the plaintiff to obtain legal injunction in case she attempted to break or broke the contract, she now avers in her answering affidavit:

"I deny that my services are special, unique, and extraordinary, and that I cannot be replaced, and that he cannot secure any other artist of like ability to fill my place in his company."

She then enumerates the rôles in which she had appeared under the plaintiff's management, and the names of numerous artists who had sung the same parts during this season in the same company, and avers that the above-mentioned artists sang the defendant's rôles with great satisfaction, and that each of them was in the employ of the plaintiff during the time of the defendant's employment, and thoroughly familiar with and competent to sing said rôles, and she enumerates the amounts paid to said artists, said payments ranging from $1,000 to $2,000 for single performances, while, as shown, de-

fendant's contract was for $200 a week for the first 11 weeks and for $250 a week thereafter.

Without passing upon other questions raised upon this appeal, we are satisfied that the order should be reversed, because the services of the defendant are not shown to be of that unique and extraordinary quality which alone justifies an injunction pendente lite. This court, in Dockstader v. Reed, 121 App. Div. 846, 106 N. Y. Supp. 795, had under consideration a contract which contained similar clauses to that at bar. We said:

"This provision, and defendant's own estimate of himself, is the only proof in the case that his services were unique and that he could not be replaced. * * * Notwithstanding the agreement of the defendant, we think the facts did not warrant the granting of an injunction. Parties to an agreement cannot contract that courts will exercise their functions or in favor of themselves. Whether or not a court will so exercise its powers is for the court itself to determine. * * * Whether equity will intervene to restrain by injunction the violation of a restrictive covenant in relation to personal services depends in large measure upon whether a substitute for the employé can readily be obtained, and whether such substitute will substantially answer the purpose of the contract. * * * The salary agreed to be paid to defendant was quite moderate, and indicates that his part was quite ordinary, and manifestly could be easily filled."

That language is apposite here. The cases relied upon by the respondent are clearly distinguishable. In Edwards v. Cissy Fitzgerald, Law Journal, January 16, 1895, the court said:

"She has a charm peculiar to herself. By her grace, beauty, and artistic methods she has become a special attraction. The plaintiff would undoubtedly find it difficult to procure a substitute who would be likely to produce a similar impression upon the public."

In Shubert v. Angeles, 80 App. Div. 625, 80 N. Y. Supp. 146, the court said:

"She was employed because of special talent as a mimic or imitator of other actresses and of actors."

In Ziegfeld v. Norworth, 134 App. Div. 951, 118 N. Y. Supp. 1151, it appeared that the defendant was the real star around whom the whole production of the plaintiff's play centered, and that she had been heavily featured in announcements and advertisements, so as to give her chief prominence.

There is nothing in the papers at all corresponding to the facts shown in the foregoing cases. The defendant has not been featured. She is not the central figure, upon whom the whole action of the play depends, of any one production, prepared at great expense. She is but a singer of stock parts, at a moderate salary, which parts many other members of the company have sung.

For these reasons, the order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.