(164 App. Div. 142)

MAGID et al. v. TANNENBAUM.   (No. 6227.)

(Supreme Court, Appellate Division, First Department.   October 23, 1914.)

1. INJUNCTION (§ 60*)—CONTRACTS—PERSONAL SERVICES.

Where a contract for the personal employment of a salesman for a tailor to the trade for a specified term stipulated that the salesman should not enter the employment of any other person in the same business, or engage in the business himself, for one year after the expiration of the term, the employer is not entitled to enjoin the employé from accepting such employment within the prohibited term, where there is no showing that the services of the employé were of special value, or that he knew any trade secrets which he might reveal to his new employer, especially where the contract provided for liquidated damages in case of breach, and the employer therefore had an adequate remedy at law.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 117–119; Dec. Dig. § 60.*]

2. WORDS AND PHRASES—"TAILORS TO THE TRADE."

The business of "tailors to the trade" consists in cutting, making, and trimming garments for merchant tailors in different parts of the United States.

Appeal from Special Term, New York County.

Action by Abraham Magid and another against Michael Tannenbaum. From an order granting an injunction pendente lite, the defendant appeals. Reversed, and motion denied.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Jacob I. Berman, of New York City, for appellant.

A. Loeb Salkin, of New York City (M. Michael Edelstein, of New York City, of counsel), for respondents.

CLARKE, J.   [1, 2]  The plaintiffs are engaged in carrying on a business known as "tailors to the trade," which said business consists of cutting, making, and trimming garments for merchant tailors in different parts of the United States.   They entered into a written contract with the defendant to take him into their employ as outside and traveling representative for a period beginning July 19, 1913, and ending on the 1st day of July, 1914, at a weekly salary of $25, and, in addition, 3 per cent. of the net profits of their business, to be ascertained by them on the 1st day of January, 1914, and on the 1st of July, 1914.   The contract contained this clause:

"Fourth. The party of the second part hereby further covenants and agrees that for a period of time commencing from the day hereof, up to and including the 1st day of July, 1915, the said party of the second part will refrain from entering the employ of any individual or individuals, firm or corporation other than the parties of the first part hereto, which said individual, firm or corporation engages in the business known as 'tailors to the trade,' consisting of cutting, making and trimming garments for the merchant tailors' trade in any part of the United States of America, except the state of California, and that he will not for himself, directly or indirectly, with or without a partner, or in connection with a corporation or joint-stock association, engage in such business of tailors to the trade, in any part of the United States, except the state of California for said period of time."

It further provided:

"In view of the extreme difficulty, if not impossibility, of ascertaining the actual damages which the parties of the first part may sustain by reason of

*For other cases see same topic-& § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the failure on the part of the party of the second part to faithfully perform all or any of the terms and conditions of this contract, it is hereby mutually agreed by and between the parties hereto that, in the event of any such breach or failure on the part of the party of the second part to faithfully perform any or all of the terms and conditions hereinbefore set forth, the party of the second part will pay to the parties of the first part the sum of one thousand dollars as liquidated damages."

It appears from the papers that the plaintiffs' business is a common business, in which at least 100 other concerns are engaged at this time in the city of New York under precisely the same conditions; that there is nothing special, unique, or extraordinary in the position or services to be rendered by the defendant, as his qualifications are the same as thousands of others employed in the city and elsewhere doing the same work. It appears that the defendant had no access to the books of the business, and that there were no trade secrets, as the business was a common one, and that he consequently came into possession of no trade secrets; that his term of employment expired on July 1, 1914; that plaintiffs did not desire to employ him any further, and, in fact, employed another man before his term expired to do the same class of work which the defendant was engaged in. Before he left the plaintiffs, he informed them that, as they would no longer employ him, he would seek other employment, and they made no objection thereto. After the expiration of the term he did secure other employment in a similar line of business, and thereafter the plaintiffs instituted this suit in equity, and procured an injunction pendente lite which restrained the defendant during the pendency of this action and until further order of this court, but in no event beyond July 1, 1915, from entering the employment of any individual or individuals, firm, or corporation other than the plaintiffs, engaged in business known as "tailors to the trade" in any part of the United States of America, except the state of California, and not to reveal any of the trade secrets belonging to the business of the plaintiffs, used by them in the prosecution of their business. That is, the defendant having completed the term of his employment, the plaintiffs, being under no obligation to retain him, and not desiring so to do, by this injunction prevent him for a year from pursuing his trade.

Even where an employé has breached his contract of employment during the term thereof, a court of equity will not interfere by injunction, unless the services of such employé are so special, unique, or extraordinary that in the event of the breach plaintiff would suffer irreparable damages, which could not be ascertained or estimated in an action at law. Even in the case of contracts of actors and singers, where a clause is inserted that the performer admits that his services are special, unique, and extraordinary, and consents that in case of breach an injunction might issue, the court has not felt itself bound to act upon that admission and consent, but has looked into the facts and refused to grant the injunction. In Dockstader v. Reed, 121 App. Div. 846, 106 N. Y. Supp. 795, the court said:

"Whether equity will intervene to restrain by injunction the violation of a restrictive covenant in relation to personal services depends in large measure upon whether a substitute for the employé can readily be obtained, and whether such substitute will substantially answer the purpose of the contract."

To the same effect, Hammerstein v. Mann, 137 App. Div. 580, 122 N. Y. Supp. 276.

In Kessler Co. v. Chappelle, 73 App. Div. 447, 77 N. Y. Supp. 285. Mr. Presiding Justice Van Brunt said:

"There is nothing in these papers which tends to show any special, unique, or extraordinary services upon the part of the defendant; * * * on the contrary, they show that others occupy the same relations to the firm and are performing similar duties. While the rule undoubtedly is that the rendition of skilled services to others may be prevented by injunction, yet we fail to find any rule which allows an injunction of this kind unless there is something special, unique, or extraordinary in the services which the defendant under his contract is called upon to render."

It is true there are cases which uphold injunctive relief by an employer after the severance of his relation with his employé, who endeavors to make merchandise of the latter's secrets, learned in the course of his employment; and like relief has been granted in cases where a person has sold a business and the good will thereof, and received the consideration therefor, and has agreed, as a part of the consideration which he has given for the price paid him, not to compete with his vendee. In our opinion such cases do not apply to the case at bar, because it does not appear that the plaintiffs had any trade secrets which the defendant had acquired, and, as pointed out in the Kessler & Co. Case, supra:

"The defendant in this action is not going into a champagne business on his own account. He is being hired by another house in his capacity as salesman, and as salesman only."

This case is further differentiated from those in which an injunction has been granted, because, if there was a valid contract not to enter a similar employment for a year after his employment with the plaintiffs ceased, the contract itself provided for liquidated damages in case of such breach, and so the plaintiffs would have an adequate remedy at law. In our opinion the record fails to disclose proper and sufficient grounds to warrant the issue of the injunction pendente lite.

The order appealed from should therefore be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.