## THE MENTER COMPANY v. ARTHUR M. BROCK AND OTHERS.[1]

December 24, 1920.

No. 21,915.

**Injunction denied—no showing of irreparable damage.**

The employee, upon entering the service, agreed that, for a certain period after the service ceased, he would not directly or indirectly engage in the same business as the employer in the city. Within the prescribed period he engaged in a like business in the city. In this action to enjoin him from working in the new employment, plaintiff failed to show that it had sustained or was likely to sustain irreparable damage on account of his conduct, and for that reason the dismissal ordered when plaintiff rested was right.

Action in the district court for Hennepin county to restrain defendants for a period of four years from establishing or conducting a retail credit clothing store in the city of Minneapolis in which defendant Brock should be employed, from using lists of customers of plaintiff

[1]Reported in 180 N. W. 553.

and from soliciting trade of the patrons of plaintiff by means of letter, circular or advertisement. The case was tried before Waite, J., who when plaintiff rested granted without prejudice defendant's motion to dismiss on the ground that plaintiff had failed to make out a cause of action warranting an issuance of an injunction and that under the pleadings it had not shown that any damages had been sustained by plaintiff by reason of the defendant Brock leaving defendant's·employ or by reason of the other defendants leaving its employ. From the judgment dismissing the action, plaintiff appealed. Affirmed.

*Kingman, Cross & Cant* and *Henry W. Haverstock,* for appellant.

*William B. Anderson,* for respondents.

HOLT, J.

The action is to enjoin defendants from carrying on the same business which plaintiff is engaged in in the city of Minneapolis. When plaintiff rested, the court dismissed the action. The appeal is from the judgment of dismissal.

No error is claimed in the dismissal of any defendant other than Brock. As to Brock the facts are these: Plaintiff operated a chain of clothing stores in many of the large cities of this country. It has one in Minneapolis, and Brock became its manager on April 4, 1916, at the weekly salary of $35. The contract of employment was in writing signed by both parties. It contains numerous covenants and agreements to be kept and performed by Brock, but we look in vain for one to be carried out or kept by plaintiff. It does not agree to keep him in its employ for a single day, nor does it, in terms, agree to pay the salary he bound himself to accept. In March, 1918, Brock and two other employees of plaintiff organized a corporation to engage in a business similar to plaintiff's, rented a store two blocks away from plaintiff's, and are now conducting a business there. The basis of the asserted hold on Brock is a paragraph in the contract mentioned, which provides, in substance, that in consideration for the employment, by the week, and the knowledge thereby obtained in plaintiff's method and trade secrets, Brock agreed that, for a period of four years after his employment by plaintiff should cease, he would not directly or indirectly enter into or

engage in the same business as plaintiff in the city of Minneapolis, or work in such line of business. If his employment ceased before the end of one year, the prohibited period should be four times as long as the time he actually worked. In case of a violation of the foregoing covenant Brock must forfeit and pay to plaintiff $3,000, which is "agreed upon as liquidated damages therefor, and shall be considered as such and not as a penalty."

The proof showed that when Brock notified plaintiff that he desired to quit its employ, no difficulty was experienced in at once supplying his place, and, in fact, more business was transacted thereafter than during Brock's management. While some witnesses for plaintiff referred in general terms to trade secrets and special methods of doing business possessed by plaintiff, when required to name any in particular they failed utterly, or else pointed out methods known and practiced generally in carrying on business like plaintiff's. The only tangible evidence is that Brock ordered for the use of his corporation books of account and records similar in form to plaintiff's and from the same firm that supplies it. However, it does not appear that the books and records used by plaintiff are copyrighted or that there is any special peculiarity about them whereby their use by a competitor could cause loss to plaintiff's business.

The record does not indicate the grounds for the dismissal. Counsel for appellant seemingly thinks that, because of the provision in respect to the payment of liquidated damages, the court concluded the only remedy was an action at law, for much effort is expended in combatting that proposition. We think that question was not reached by the court below, and, as the proof stands, need not be considered here.

Equity will not enjoin the breach of a negative covenant in a contract, unless it is made to appear that irreparable injury has resulted or will in all probability result to complainant from such breach. In cases where an established business or trade and its good will has been sold, and, as part of the transaction, the seller has covenanted not to engage in the same business in the vicinity for a certain period, the mere breach strongly points to irreparable injury, in that the old business built up by him and his name will lose by having its customers drawn

to a similar new enterprise when he enters it. By the purchase the buyer, upon a supposedly adequate consideration, secured a going business and its protection by the covenant from encroachment by the seller. Examples of such cases are furnished by Holliston v. Ernston, 124 Minn. 49, 144 N. W. 415; Andrews v. Kingsbury, 212 Ill. 97, 72 N. E. 11; Ropes v. Upton, 125 Mass. 258; Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464. We think the breach of a like covenant in an employment contract does not so readily indicate irreparable injury to the employer. Injury is not shown by the mere fact that the employee has left the service and has entered the employ of a rival concern. In McCall Co. v. Wright. 198 N. Y. 143, 91 N. E. 516, 31 L.R.A.(N.S.) 249, the rule applicable is, in substance:

Where the services have been of such a character that the employee's name carries with it the good will of the employer's business, or where the employee has obtained knowledge of secrets in such business, the disclosure of which would result in irreparable damage to the employer, it appearing that the subsequent employment was to obtain the benefit of the secrets or there was danger that such secrets would be disclosed in the subsequent employment, injunctive relief will be granted. See also Simms v. Burnette, 55 Fla. 702, 46 South. 90, 16 L.R.A.(N.S.) 389, 127 Am. St. 201, 15 Ann. Cas. 690; Osius v. Hinchman, 150 Mich. 603, 114 N. W. 402, 16 L.R.A.(N.S.) 393.

Tested by that rule this case fails. There is no evidence that Brock, in the position of manager, came in contact with customers of plaintiff so as to obtain any personal hold upon the good will of the business, or that he had made or threatened to make any effort to secure or attract plaintiff's patrons.

Plaintiff's business is selling men's and women's clothing on the instalment plan, the purchaser of the garment signing a contract to pay for the same in small future instalments. We have already adverted to the absence of any so-called trade secrets or peculiar methods possessed only by plaintiff in conducting this business, hence no reason exists for an injunction to protect these, under the rule of such cases as Magnolia Metal Co. v. Price, 65 App. Div. 276, 72 N. Y. Supp. 792. Nor is this case like one where a person is hired to work up a route or

territory and serve the customers obtained therein, as, for instance, a milk or laundry route, and the like. There the employee comes directly in contact with the customers. They may be attracted to him personally, and are likely to go with him should he enter the service of a competitor. Typical cases of this sort are found in Mutual Milk & Cream Co. v. Heldt, 120 App. Div. 795, 105 N. Y. Supp. 661; A. L. & J. J. Reynolds Co. v. Dreyer, 33 N. Y. Supp. 649, 12 Misc. 368; American Ice Co. v. Lynch, 74 N. J. Eq. 298, 70 Atl. 138; Eureka Laundry Co. v. Long, 146 Wis. 205, 131 N. W. 412, 35 L.R.A.(N.S.) 119. The right to injunction there is rested on the principle that the employer's business is wrongfully interfered with, and such interference readily appears when the former employee invades the route in behalf of a new employer.

Of course, cases relating to services of a unique kind, such as those of an opera singer, actor or person of special qualifications, are not in point here.

It is readily seen that courts are and should be cautious in complying with the request of an employer to enjoin a former servant who has violated a covenant of this sort from earning a livelihood. It may well be surmised that such a covenant finds its way into an employment contract not so much to protect the business as to needlessly fetter the employee, and prevent him from seeking to better his condition by securing employment with competing concerns. One who has nothing but his labor to sell, and is in urgent need of selling that, cannot well afford to raise any objection to any of the terms in the contract of employment offered him, so long as the wages are acceptable. Therefore, some proof of irreparable damage ought to be adduced in such a case before equitable relief by way of injunction will issue.

In W. J. Johnston Co. v. Hunt, 66 Hun, 504, 21 N. Y. Supp. 314 (affirmed in 142 N. Y. 621, 27 N. E. 564, on opinion of court below), where the defendant in bad faith flagrantly violated his agreement to work for the plaintiff, injunctive relief was nevertheless denied, the court saying: "It was shown that the plaintiff, immediately after the defendant had broken his contract, substituted in his place another; and, while there is some slight evidence to show that the effect of the

withdrawal of the defendant Hunt and the substitution of another resulted, for the time being, in some loss of advertising to the plaintiff's paper, yet it failed to establish what is required in cases of this kind, viz., that the injury was irreparable."

We quote from Dockstader v. Reed, 121 App. Div. 846, 106 N. Y. Supp. 795: "Whether equity will intervene to restrain by injunction the violation of a restrictive covenant in relation to personal services, depends in large measure upon whether a substitute for the employee can readily be obtained, and whether such substitute will substantially answer the purpose of the contract." The substitute in the case at bar did. And no attempt was made to show an injury by any attempt to seek or solicit plaintiff's customers or trade. Magid v. Tannenbaum, 164 App. Div. 142, 149 N. Y. Supp. 445.

Injunction will not be granted to enforce the provisions of a contract unless the court is satisfied that the enforcement will be just and equitable and will not work hardship or oppression. Bradshaw v. Millikin, 173 N. C. 432, 92 S. E. 161, L.R.A. 1917E, 880. As already remarked, this contract is so one-sided as to obligations that the court might well hesitate at the enforcement of the one now invoked, and which is in restraint of the right to labor. Here when Brock was offered a position of uncertain tenure at a modest salary, he must also needs sign an iron-clad contract binding him to do and refrain from doing many specified things, while plaintiff, the employer, assumed no obligation whatever. In Sternberg v. O'Brien, 48 N. J. Eq. 370, 22 Atl. 348, the court refused to enjoin one who, when employed by the complainant as a collector in its business, conducted somewhat like plaintiff's here, had agreed not to work in the same line for a certain period after ceasing to work for complainant, saying of the latter: "He wants the court to restrain the defendant from working at a particular employment in two of the largest cities of the state. To many persons the right to labor is the most important and valuable right they possess; it is their fortune, constituting the only means they have to obtain food, raiment and shelter and to acquire property. To such persons a deprivation of this right is ruin, and to abridge it is to do them an injury which will very likely result in their ruin. When, therefore, a court is asked either

to deprive a person of this right, or to abridge it, it is its duty, before it acts, to consider with the utmost care whether, if it does what it is asked to do, it will not, on a careful comparison of consequences, do more injustice than justice."

We think the situation presented by the evidence in this record shows the absence of every element that would incline a court to grant the relief asked. The dismissal was right.

Judgment affirmed.