Shubert Theatrical Company, Appellant, *v.* Edward Gallagher and Another, the Defendant Gallagher Also Known as Ed Gallagher, Respondents.

First Department, November 2, 1923.

**Injunctions — action to restrain defendants from violating contract to act in vaudeville for plaintiff exclusively — contract provided for services to begin September 29, 1921 — plaintiff did not violate contract by failure to put defendants into play — defendants waived notice of opening on September 29, 1921, by repudiation of contract and by accepting other work — evidence shows that defendants' services are of special, unique and unusual quality — injunction granted.**

In an action to restrain the defendants from violating their contract with the plaintiff, whereby they agreed to work for the plaintiff exclusively as actors, and not to render services for any other person or corporation without the plaintiff's consent, it appeared that the contract provided that the first performance should take place not later than September 29, 1921; that the plaintiff had the option to renew the contract for two years from September 15, 1922; and that plaintiff notified the defendants to appear for the rendition of their services on October 3, 1921.

*Held*, that the contract between the parties specifically gave the plaintiff the option to place the defendants in vaudeville and although the plaintiff gave the defendants hopes of being put in a play, the failure of the plaintiff to place the defendants in a play did not constitute a violation of the contract;

That the failure of the plaintiff to notify the defendants to commence work on September twenty-ninth did not excuse the defendants from the performance of their contract, since it appears that prior to the time the notice was served the defendants stated to the plaintiff that they would not go on with the contract unless it was agreed that they would be placed in a play prior to January 1, 1922, and for the further reason that on September 29, 1921, the defendants were actually engaged in work for a rival producer;

That the evidence shows that the defendants' services were of a special, unique and unusual quality which renders them liable to be enjoined from performing for others than the plaintiff for whom they contracted to act exclusively.

Martin, J., dissents.

Appeal by the plaintiff, Shubert Theatrical Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 5th day of April, 1923, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint.

*William Klein* [*I. Maurice Wormser* of counsel; *William Klein* with him on the brief], for the appellant.

*Tobias A. Keppler* [*Henry S. Dottenheim* of counsel; *Tobias A Keppler* with him on the brief], for the respondents.

McAvoy, J.:

Plaintiff company brought this action for an injunction to prevent the defendants, who are actors, from violating this provision in their contract:

" 14. The actor agrees * * * to render services exclusively to the Manager from the date of beginning of rehearsals, and not to render services to any other person, firm or corporation without the consent of the Manager."

Under the so-called standard contract of the Actors' Equity Association the plaintiff is denominated manager and the defendants are termed actors. This contract was made on May 18, 1921, and the whole of the provisions of defendants' engagements are contained in two documents, the one above mentioned, Actors' Equity form of standard contract, the other being in form a typewritten letter of the same date which was approved by the defendants over their signatures. The employment under this contract ran for the season 1921–1922, with a guaranty of thirty-five weeks' employment, the first public performance to be not later than September 29, 1921; and there was an option to plaintiff to re-engage defendants for the period from September 15, 1922, to September 15, 1924, which renewal option it is conceded was exercised by the plaintiff.

Notwithstanding the fact that the plaintiff had a contract with the defendants in full force and effect after September 1, 1921, and not expiring until September 1, 1922, it is found by the court below that these defendants made contracts with a rival theatrical producer to appear during the weeks commencing September 12, September 19, and September 26, 1921; and that subsequent to September 30, 1921, the defendants made a number of contracts with a rival theatrical producer known as the Keith Circuit to play in various cities throughout the United States commencing on October 3, 1921, and thereafter upon various dates up to and including April, 1922. In April, 1922, the obligations of this contract to appear exclusively for the plaintiff still persisting, the defendants made another contract with one Ziegfeld to appear in the production known as Ziegfeld Follies at $1,500 weekly, double the compensation·which their original contract with the plaintiff called for; and they continued to perform in this production up to and including the time at which the trial of this action was held. On December 5, 1922, defendants entered into a contract with George W. White and C. P. Dillingham for one year beginning September 1, 1923, at a weekly salary of $2,000 plus ten per cent of the gross receipts over $15,000 weekly.

The provisions of the contract and these findings make out a

right in the plaintiff to the defendants' exclusive services, and the failure upon the defendants' part to render any services to the plaintiff during that period establishes their utter disregard for their obligation, unless we may find here, as the court did at Special Term, that they were relieved of these obligations, either because their services were not of such a special, unique and unusual character as to make them of special value to the plaintiff company and bring them within the class of employees whose negative covenants not to enter into the employment of others may be enforced by a prohibitive injunction; or that the defendants were absolved of any duty to plaintiff company because of a breach by the plaintiff of an understanding not precisely expressed in either of the two documents constituting the contract, whereby they were not to be employed in what is known in theatrical parlance as vaudeville, but were to be featured in what is professionally termed " production." There is no doubt that there was a desire expressed on the part of the defendants to be featured in production and an acquiescence upon the part of plaintiff's manager in that desire as soon as he could secure a play for them which would suit their peculiar talent; but the weight of probability and the law of evidence are strongly opposed to their contention that there was any contractual promise, the breach of which would justify their repudiation of their agreement to render services in vaudeville. The letter contains no ambiguity whatever, and defendants' own testimony indicates that they knew they might be put into vaudeville notwithstanding the roseate hope held out to them of ultimately being put into a play.

This is the clause upon which we are asked to hold the language ambiguous and doubtful in its application: " It is understood that we shall have the right to place you in what is termed ' vaudeville ' at any time we so desire, and when playing ' vaudeville,' you are to play the number of performances customary in first-class vaudeville theatres, but not to exceed fourteen performances in any one week, at the same salary as called for above."

As an addendum to the contract, there is signed the following clause which defendants admit they read: " I have read the above and same confirms my understanding of the agreement, and I sign my name at the bottom hereof, making the above and this a contract between us, for the aforementioned term."

Besides the court below found that defendants knew at the time when they signed the contract on May 18, 1921, that the said contract contained the clause in relation to the right of plaintiff company to place them in vaudeville.

There is another ground upon which defendants urge that they

should not be compelled to refrain from engaging themselves with other persons for their exclusive services as actors, which is, that the contract called for performance not later than September 29, 1921, and that the only notice which they received from the plaintiff company to begin performances was that of September 10, 1921, which called for them to appear on October 3, 1921. It seems to us that this defense of failure of performance because the actors were not notified to appear precisely on the day on which they were to begin performances according to the contract, cannot be urged here for two reasons: *First*, because the defendants' letter of August 24, 1921, is in effect a repudiation of an intent to carry out their performance of the contract unless the same was changed to conform to their desire that unless they should be placed in production prior to January 1, 1922, they be released from further obligation to plaintiff; and *second*, because of the failure of defendants to respond to the notice of September 10, 1921, which directed them to appear for the rendition of their services on October 3, 1921. It is found that they were actually engaged in performances for Keith during the week immediately preceding October 3, 1921, which day is the opening day of the week following that in which September twenty-ninth is contained; and that September 29, 1921, was at about the end of the preceding week during which they were continuing to perform for the Keith Circuit. There is nothing to establish any repudiation on the part of the plaintiff company to pay for their services as of September 29, 1921, if such suggestion were made that the terms of the contract required it. The trial court has found that the notice was given to defendants of the renewal for the additional period " according to the terms of the said contract of May 18, 1921;" and that on October 3, 1921, plaintiff was " ready, able and willing to give the defendants immediate employment in vaudeville under the contract of May 18, 1921." Defendants never replied to the letter of September 10, 1921.

The conduct of the respondents in all their previous dealings with plaintiff prior to the notice of September 10, 1921, and prior to the date when performances were to have begun, indicated an intent to waive and abandon a notice of opening precisely on September 29, 1921. We think that the defenses of breach of contract upon the theory that plaintiff company was obliged to put defendants into a play or production, and that they failed in strict performance by neglecting to put defendants into production, or to put the defendants into vaudeville precisely on September 29, 1921, must fail.

In *Winter Garden Co.* v. *Smith* (U. S. Dist. Court, decided Jan. 3, 1922, not reported) Judge AUGUSTUS N. HAND in his opinion

said: " The law is not a mere game, the rules of which are made to surprise or confound the participants, but its rules are aimed at working out justice in a world where perfection and ideal adjustment are rarely possible. If a promise in a contract has been substantially performed, and no appreciable damage can result from a slight failure of performance, a trifling lapse even *in limine*, cannot justify rescission." Upon appeal to the United States Circuit Court of Appeals, the injunction granted against the defendants in that case was affirmed (282 Fed. Rep. 166), Judge Mayer saying in his opinion, after characterizing the conduct of the defendants as a " flagrant instance of a deliberate and inexcusable breach of contract:" " From decisions of this court over a long period of years it must be apparent that we are not astute to find some way in which breaches of contract may be excused. A court of equity is * * * ' a court of conscience, which within the scope of its powers is governed by its own rules,' and it manifests its value in the administration of justice in no more effective way than in constantly making clear that it will not tolerate deliberate and unconscionable breaches of contract."

Judge Rogers in *Shubert Theatrical Co.* v. *Rath* (271 Fed. Rep. 827), writing for the United States Circuit Court of Appeals, said, in affirming the lower court: " Contracts are made to be kept and not broken, and the parties who make them are in duty and in law bound to perform them."

This leaves for discussion the question, which was most urgently argued, as to whether the defendants' services are of that special, unique and unusual quality which renders them liable to be enjoined from performing for others than those with whom they had first engaged their services. Since this is the question which requires expert knowledge, there is found, as usual in such instances, a conflict of opinion upon the part of those experienced in stage craft and stage management as to whether these defendants are ordinary vaudeville performers, easily replaceable and not at all unique or specially gifted, or whether their presentation with unusual talent of a peculiar melody by the carrying out of unusual mannerisms in the execution of their act, and the ability through unusual attainments, unique stage business and attractive personality and powers of attraction to render themselves of special value to a theatrical company, make them of that unique and special character which renders their replacement or substitution almost impossible according to common standards of endeavor. We think the record demonstrates that their talent is peculiar and unique; that even the defendants' witnesses did not, when their testimony is analyzed, deny that they have had unusual success

in their particular type of entertainment. One Rogers, the manager of Keith's Theatre Palace, the owners of which first engaged them, after they had contracted to appear with plaintiff company, said they were " one of the headliners in our circuit." They have played in two of Keith's chief theatres in New York city within a mile of each other within the same week, receiving double salaries. Rogers stated that nobody else could do the same act, and that their names have been " in the top " for years and have had an especial meaning to the theatre-going public; that " big type " has been used for them. Witness Lederer, although stating that he did not consider defendants as unique or extraordinary, testified on cross-examination that he considered their performance unique and of a special merit; that he considered the four witnesses for the plaintiff who testified to the unusual nature of defendants' performances as three or four of the most prominent producers in the country and experts in their line. This witness was forced to the statement, when confronted with the successful conduct of performances of these defendants and their undoubted success, that " it is unexplainable." There is a considerable weakening in the evidence of the other witnesses for defendants when their admission as to the character of defendants' performance is considered, and defendants' evidence of the lack of special merit in their work is clearly outweighed, as opposed to the proof of plaintiff's experts. It is abundantly apparent to us that these defendants come within the class whose services are of such a character that they will be deemed practically irreplaceable. It is said that we are constrained by a former decision of this court (200 App. Div. 596) upon appeal from the order refusing a temporary injunction, to hold both that the defendants are mere general utility men, and that there was a breach of the contract by failure to provide them with a performance on or before fourteen days after the fifteenth of September. This does not follow from our decision then made. The proof by affidavit, then, is completely subverted, and its effect changed by the oral testimony, with its true meanings and relative bearing exhibited in cross-examination given at the trial of the action; and all that was pointed out in that opinion, with respect to the question of the breach of the agreement, was that the burden of proof that plaintiff had performed was not so clear as to justify a preliminary injunction. Such a ruling in nowise affects the determination to be made upon a full trial of the issues, where the conduct and relations of the parties are open to the closest scrutiny, which oral examinations disclose, and a comparison of our ruling then and that we now make exhibits no departure from what was then determined.

We think the judgment for defendants should be reversed, with costs, and judgment ordered for the plaintiff, with costs, restraining the defendants from rendering their services elsewhere than with the plaintiff company.

CLARKE, P. J., DOWLING and SMITH, JJ., concur; MARTIN, J., dissents.

Judgment reversed, with costs, and judgment ordered for the plaintiff, with costs, restraining the defendants from rendering their services elsewhere than with the plaintiff company. Settle order on notice.