In re Carl T. MITCHELL, p/k/a Twista, Debtor.

Creator's Way Associated Labels, Inc. and LB Entertainment, Plaintiffs,

v.

Carl T. Mitchell, p/k/a Twista, Defendant.

Bankruptcy No. 99 B 43035(SMB). Adversary No. 99–8589A.

United States Bankruptcy Court, S.D. New York.

May 24, 2000.

56

O'Melveny & Myers LLP (Robert J. White, Deborah J. Saltzman, of counsel), Los Angeles, CA, for plaintiffs.

Lehman, Lehman & Gruber (Alan S. Maza, of counsel), Livingston, NJ, for defendant.

## MEMORANDUM DECISION DENYING CROSS–MOTIONS FOR SUMMARY JUDGMENT

STUART M. BERNSTEIN, Chief Judge.

A chapter 7 discharge disposes of most pre-petition obligations, but leaves some unaffected. The principal question in this adversary proceeding involves the dischargeability of an exclusive performance obligation under a personal service recording contract. At my suggestion, each party moved for summary judgment, but I now conclude that neither party is entitled to judgment as a matter of law. Accordingly, the motions are denied.

## BACKGROUND

In October 1996, Creator's Way Associated Labels, Inc. ("Creator's Way") entered into an exclusive recording agreement (the "Agreement") with Carl T. Mitchell p/k/a Twista ("Mitchell").[1] Mitchell agreed to record enough material for one album, and deliver the Master Recording to Creator's Way. (Agreement § 3.01.) Creator's Way could extend the Agreement for up to six consecutive periods obligating Mitchell to record and deliver an album during each period. (Id., §§ 1.02, 3.02.)

While the Agreement remained in effect, and subject to a limited exception, (see id., § 13.02.1), Mitchell was obligated to record "exclusively" for Creator's Way. (Id., §§ 2.01, 13.02(a)(3).) In addition, he expressly acknowledged that his personal services were "unique and extraordinary, and the loss thereof cannot be adequately compensated in damages, and [Creator's Way] shall be entitled to injunctive relief to enforce the provisions of this agreement." (Id., § 13.06.) Except for a termination for cause, the term of the Agreement was keyed to Mitchell's completion of his performance. (See id., § 1.01.) Thus, if Mitchell did not complete performance, the contract never ended, and Mitchell remained subject to the exclusive performance provisions. In this regard, the Agreement is still in effect. Finally, the parties selected New York as the governing law. (Id., § 19.08.)

After Mitchell filed his chapter 7 petition, the plaintiffs commenced this adversary proceeding. The complaint does not seek an injunction. Instead, it only seeks a declaration that the exclusive performance obligation is not discharged. The plaintiffs subsequently moved for summary judgment, relying on two arguments. First, the Agreement is not property of the estate or capable of assumption, and as a result, the performance obligations are not discharged. Second, the right to enforce the exclusive performance provision is not a "claim," or corresponding "debt," that is discharged under Code §§ 523 and 727. (Id., ¶ 19.) In his opposition and cross-motion, Mitchell insists that the Agreement is an executory contract that is property of the estate, it can be rejected pursuant to Code § 365, and as a result of rejection, the exclusive performance obligation is discharged.

## DISCUSSION

 The parties concur that the Agreement is a contract for personal ser-

---

1. LP Entertainment, the co-plaintiff, did not sign the Agreement, and the basis of its rights is unclear. Mitchell, however, has not challenged any part of the complaint on this basis.

vices. (*Plaintiffs Statement of Undisputed Material Facts*, ¶ 4; *Debtor's Statement of Material Facts to which Moving Party Contends there Is No Genuine Issue to Be Tried*, ¶ 2). As such, it could not be assigned under New York law without the other party's consent, *see Paige v. Faure*, 229 N.Y. 114, 127 N.E. 898, 899 (1920); 6A N.Y.Jur.2d *Assignments* § 11, at 222 (1997), and Mitchell's trustee could not, therefore, assume or assign it to another performer without Creator's Way's consent. *See* 11 U.S.C. § 365(c)(1).[2] Since it was not assumed within sixty days after the order for relief, it was deemed rejected, 11 U.S.C. § 365(d)(1), and the rejection gave rise to a pre-petition breach. 11 U.S.C. § 365(g)(1). This much is certain.

■ The other effects of rejection are not. Although there is some contrary authority, it now appears to be well-settled that rejection does not terminate an executory contract, *see Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 386–87 (2d Cir.1997), or necessarily avoid the rights of the non-debtor party under the contract. *Cohen v. Drexel Burnham Lambert Group, Inc. (Drexel Burnham Lambert Group, Inc.)*, 138 B.R. 687, 709 (Bankr.S.D.N.Y.1992) (quoting Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U.Colo.L.Rev. 1, 17 (1991)). Further, to determine the effect of the rejection, we look to state law. *In re Lavigne*, 114 F.3d at 387; *In re Yasin*, 179 B.R. 43, 50 (Bankr.S.D.N.Y.1995).

With this background, I turn to the parties' arguments. The plaintiffs contend that the contract is not property of the estate, and conclude from this proposition that the unperformed obligations are not discharged. Concededly, courts differ on the question of whether unassumable contracts, or contracts that are never assumed, become property of the estate. *Compare Tonry v. Hebert (In re Tonry)*, 724 F.2d 467, 469 (5th Cir.1984) (contract rights become property of the estate only when the contract is assumed) *with Computer Communications, Inc. v. Codex Corp. (In re Computer Communications, Inc.)*, 824 F.2d 725, 730 (9th Cir.1987) (contract rights become property of the estate when the case is commenced). The status of the Agreement as estate property is, however, beside the point. The plaintiff concedes that any pre-petition breach giving rise to a money damage claim in favor of Mitchell would vest in the estate under § 541(a). *Accord Delightful Music Ltd. v. Taylor (In re Taylor)*, 913 F.2d 102, 106 (3d Cir.1990). Similarly, any pre-petition breach by Mitchell giving rise to a monetary claim for damages would be discharged. Thus, the appropriate inquiry is not whether the contract is estate property, but whether the debtor's statutory breach of his exclusive performance obligation gives rise to a "claim" that will be discharged under 11 U.S.C. § 727(b).[3]

■ According to § 101(5), a "claim" means

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

(B) such party does not consent to such assumption or assignment. . . .

---

2. Section 365(c)(1) states:

The trustee may not assume or assign an executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than

3. Actually, "debts" are discharged, but a "debt" is a "liability on a claim." 11 U.S.C. § 101(12).

or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. . . .

The focus in this case is on subdivision (B). An equitable remedy, such as an injunction, will "give rise to a right to payment," and therefore be discharged, if payment of a monetary remedy is an *alternative* to the equitable remedy. *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305 (3d Cir. 1999); *In re Continental Airlines*, 125 F.3d 120, 133 (3d Cir.1997), *cert. denied*, 522 U.S. 1114, 118 S.Ct. 1049, 140 L.Ed.2d 113 (1998); *In re Udell*, 18 F.3d 403, 408 (7th Cir.1994); *United States v. LTV Corp. (In re Chateaugay Corp.)*, 944 F.2d 997, 1008 (2d Cir.1991) ("An injunction that does no more than impose an obligation entirely as an alternative to a payment right is dischargeable"); *see Sheerin v. Davis (In·re Davis)*, 3 F.3d 113, 116 (5th Cir.1993). State law, here New York, determines whether a party's breach gives rise to a right to payment. *In re Udell*, 18 F.3d at 408.

▮ Under New York law, a court will not compel the specific performance of a personal service contract. *Arias v. Solis*, 754 F.Supp. 290, 293 (E.D.N.Y.1991); *see Stiefel & Co. v. Blitz*, No. 93 Civ. 6080(PNL), 1993 WL 526386, at *3 (S.D.N.Y. Dec.14, 1993). Nevertheless, a court may restrain its breach:

> If the employee refuses to perform during the period of employment, was furnishing unique services, has expressly or by clear implication agreed not to compete for the duration of the contract and the employer is exposed to irreparable injury, it may be appropriate to restrain the employee from competing until the agreement expires.

*American Broadcasting Cos., Inc. v. Wolf*, 52 N.Y.2d 394, 438 N.Y.S.2d 482, 420 N.E.2d 363 (1981); *accord Shubert Theatrical Co. v. Gallagher*, 206 A.D. 514, 201 N.Y.S. 577 (N.Y.App.Div.1923). I assume that Mitchell refuses to perform. In addition, the Agreement states that he must perform exclusively for Creator's Way, Mitchell acknowledges that his services are unique and extraordinary, and he concedes that in the event of a breach, damages will not be adequate and Creator's Way will be entitled to an injunction.

▮ The Court, however, is not bound by the contractual agreement. "Parties to an agreement cannot contract that courts will exercise their functions against or in favor of themselves. Whether or not a court will so exercise its powers is for the court to determine." *Dockstader v. Reed*, 121 A.D. 846, 106 ·N.Y.S. 795, 797 (N.Y.App.Div.1907); *accord Arias v. Solis*, 754 F.Supp. at 294 ("Even though a contract may expressly state that the employee's services are unique or extraordinary, as in this case, the Court is not bound by the statement, and it does not preclude the Court from making a finding to the contrary"); *Frederick Bros. Artists Corp. v. Yates*, 271 A.D. 69, 62 N.Y.S.2d 714, 715 (1946) ("The fact that the contract of hiring acknowledged that the defendant's abilities and capabilities were unique is not controlling upon a court of equity"), *aff'd without op.*, 296 N.Y. 820, 72 N.E.2d 13 (1947); *Magid v. Tannenbaum*, 164 A.D. 142, 149 N.Y.S. 445, 446 (N.Y.App.Div. 1914) (court is not bound by admission that services are unique or extraordinary or consent to an injunction in the case of a breach, and must instead look to the facts); *Hammerstein v. Mann*, 137 A.D. 580, 122 N.Y.S. 276 (N.Y.App.Div.1910) (reversing grant of injunction absent proof that defendant singer's services were unique or extraordinary, although she admitted such and consented to injunction in parties' contract); *see generally* 76 N.Y.Jur.2d *Injunctions* § 77, at 469 (1988). Moreover, in the absence of actual proof beyond the contractual stipulations that the services are unique and cannot be replaced, injunctive relief is unwarranted. *See Dockstader v. Reed*, 106 N.Y.S. at 796.

▮ In addition, a party seeking to enjoin the breach of a personal service agreement must demonstrate that he lacks

an adequate remedy at law. 76 N.Y.JUR.2D *Injunctions* § 77, at 469 (1988). In this regard, a breach of a personal service contract ordinarily gives rise to a damage claim for lost profits. *See World Auto Parts, Inc. v. Labenski,* 261 A.D.2d 850, 689 N.Y.S.2d 582, 583 (1999) (measure of damages for breach of non-competition is loss sustained by breach, including lost profits); *Pencom Sys., Inc. v. Shapiro,* 193 A.D.2d 561, 598 N.Y.S.2d 212, 212 (N.Y.App.Div.1993) (same). The availability of the monetary remedy, however, does not automatically mean that damages are an adequate alternative under state law, 76 N.Y.JUR.2D *Injunctions* § 72, at 460 (1988) ("[w]here the legal remedy is considered to be inadequate, the existence of such remedy is no defense to an action to restrain the breach of a contract"), or bankruptcy law. *In re Davis,* 3 F.3d at 116 ("While section 101(5)(B) encourages creditors to select money damages from among alternative remedies, it does not require creditors entitled to an equitable remedy to select a suboptimal remedy for money damages"); *contra Maids Int'l, Inc. v. Ward (In re Ward),* 194 B.R. 703, 712 (Bankr.D.Mass.1996) (concluding that the right to damages renders the equitable alternative a "claim" subject to discharge).

■ As the foregoing discussion suggests, the dischargeability of Mitchell's exclusive performance obligation and Creator's Way's right to injunctive relief overlap. Indeed, the two issues generally come up in single proceeding when the non-debtor seeks an injunction or relief from the stay to pursue injunctive relief in a non-bankruptcy court.[4] Here, however, the plaintiffs have merely requested declaratory relief, a decision which, for the reasons noted, is difficult to reach in a vacuum.

Likewise, the plaintiffs have failed to show that they are entitled to injunctive relief. To begin with, LB Entertainment, the co-plaintiff, has not identified the source of its contractual rights. Further, aside from the language in the Agreement, there is no evidence to support a finding that Mitchell's services are extraordinary or unique, or cannot be replaced, or that damages are inadequate.

■ Finally, an injunction in this case may be inappropriate regardless of the proof. The grant of an injunction is discretionary, and "the availability of such relief depends not alone on the right of the party seeking it but as well on the appropriateness of its issuance in the circumstances in which it is sought." *Gerges v. Koch,* 62 N.Y.2d 84, 476 N.Y.S.2d 73, 464 N.E.2d 441, 446 (1984); *accord* 67 N.Y.JUR.2D *Injunctions* § 29, at 389 (1988). As noted, the Agreement ·does not terminate until Mitchell completes his exclusive performance obligations. The type of injunction that the plaintiffs envision could bind Mitchell for the rest of his life, and prevent him from ever working for anyone other that Creator's Way. For all of these reasons, the plaintiffs' motion for summary judgment must be denied.

Mitchell has also failed to demonstrate that he is entitled to relief as a matter of law. Like Creator's Way, he offers no evidence aside from the Agreement. Further, his main authorities conclude either that rejection terminates the obligation to perform in light of the "fresh start" policy of the Code, *see All Blacks B.V. v. Gruntruck,* 199 B.R. 970, 974–75 (W.D.Wash. 1996); *In re Cloyd,* 238 B.R. 328, 335 (Bankr.E.D.Mich.1999), or that an exclusive recording agreement, although a personal service contract, can nevertheless be rejected. *In re Taylor,* 913 F.2d at 107. As noted, the determinative question is whether the unperformed obligation gives rise to a right to payment under state law, which right is an adequate alternative to equitable relief.

Under the circumstances, neither party has shown an entitlement to relief as a

---

4. Mitchell has already received his general discharge. Thus, the automatic stay no longer bars an injunction action. *See* 11 U.S.C. § 362(c)(2)(C).

matter of law. Accordingly, the motions are denied, and the parties are directed to contact chambers to schedule a pre-trial conference. Settle order on notice.