**In the Matter of MICHIGAN EXPRESS, INC., a Michigan corporation, Debtor.**

**No. 34372B.**

United States District Court,
W. D. Michigan, S. D.

Feb. 12, 1972.

Rehearing Denied March 8, 1972.

Warner, Norcross & Judd, Grand Rapids, Mich. (Edward Malinzak, Grand Rapids, Mich., of counsel), for debtor.

Robert Sawdey, Grand Rapids, Mich., for receiver.

Albert Green, Detroit, Mich., for Central Transport, Inc.

Law, Buchen, Weathers, Richardson & Dutcher, Grand Rapids, Mich. (Gary P. Schenk, Grand Rapids, Mich., of counsel), for petitioner.

## OPINION AND ORDER

*FOX, Chief Judge.*

In these bankruptcy proceedings the debtor, Michigan Express, Inc., is a Michigan corporation seeking an arrangement under Chapter XI. The bankruptcy petition was filed on November 9, 1970.

The petitioner before this court is Henry T. Winchester, an individual creditor of the bankrupt. He pursues his claim for full satisfaction of an unsecured debt owed him by the debtor under a consulting contract, notwithstanding the terms of the confirmed Plan of Arrangement which provide for 15% payments in satisfaction of all unsecured debts.

The facts which give rise to the present dispute are as follows: On September 24, 1968, the debtor corporation finalized an agreement with Tripp Trucking Company (a partnership, with Henry Winchester and William L. Tripp as partners) and Wood and Meyer Truck Lines, Inc. (a corporation, with Henry Winchester as the major stockholder). By way of this agreement, the debtor purchased business assets, including trucks, terminal facilities, good will and certain operating authorities which conferred the right to use certain truck transportation routes.

A great part of the consideration given by the debtor in return for these business assets was secured. However, as a separate and distinct part of the consideration for the over-all agreement, especially for the purchase of the operating authorities, the debtor corporation gave Mr. Winchester a consulting agreement for a term of five years, with payments to be made at the rate of $6,000 per year. Under the express terms of the agreement, Winchester was to be paid this money *even if* he failed or refused to perform any consultation services. The record establishes that this kind of agreement, given in connection with the kind of over-all transaction here involved, is quite common in the industry. In effect, it merely obligated the purchaser directly to Mr. Winchester in the amount of $30,000 spread equally over a period of five years. This obligation was, by the design of all parties, left unsecured.

By the time of the filing of the bankruptcy petition, $12,000 had already been paid by the debtor to Mr. Winchester, leaving an unpaid balance of $18,000.

On December 29, 1970, the Referee in Bankruptcy, the Honorable Edward H. Benson, ruled that the consulting agreement was not in fact an executory contract, since the creditor was not required to perform service. Accordingly, the debtor was not allowed to reject the contract under the authorizing provisions of Section 313 of the Bankruptcy Act, 11 U.S.C. § 713. No appeal was taken from this ruling.

The debtor's Plan of Arrangement was subsequently submitted on January 4, 1971, and confirmed February 8, 1971, although the creditor Winchester withheld his consent.

The bankrupt and the creditor Winchester now are in dispute as to whether or not Winchester's claim under the consulting contract is entitled to priority under the statute.

The point stressed by petitioner is that while the Referee treated his claim as a fee for services, in fact his claim should be treated as partial consideration for the entire transfer of business assets. So viewed, petitioner argues, a § 64a(1) priority must spring from the "continuing benefits" derived by the estate from the goods and rights transferred.

On October 15, 1971, the Referee rendered a decision in favor of the bankrupt, ruling no grounds for priority existed under the provisions of § 64a(1) of the Bankruptcy Act, 11 U.S.C. § 104a(1), relied upon by Winchester. Thereupon, Winchester timely filed this petition for review.

Section 302 of the Bankruptcy Act provides:

> "The provisions of chapters I to VII, inclusive, of this Act shall, insofar as they are not inconsistent with or in conflict with the provisions of this chapter, apply in proceedings under this chapter." (Chapter XI.)

Section 64a(1) provides (part of Chapters I to VII):

> "(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be
>
>> (1) The costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition . . .."

From the statute, it is clear that in order to prevail, the petitioner must establish that his claim, whether conceptualized as a fee for consulting services already performed or as a partial payment for goods sold, qualifies as a cost or expense of administration. Without going any farther, the argument thus posed in its ultimate conclusory form appears highly implausible at best. Petitioner's claim, however viewed, much more resembles an ordinary unsecured debt, fully paid for in advance of the filing in bankruptcy, than it does a cost of holding the estate together during the pendency of bankruptcy proceedings.

Petitioner cites American Anthracite and Bituminous Coal Corp. v. Leonardo Arrivabene, 280 F.2d 119 (2nd Cir. 1960) for the proposition that a creditor is entitled to priority under § 64a(1) if the bankrupt estate continues to receive benefits under the contract which gives rise to his claim. The specific language asserted reads as follows:

> "The claim of a creditor having an executory contract with the debtor at the time the debtor's petition is filed is entitled to priority under these provisions only if the trustee or debtor in possession elects to assume the contract or if he receives benefits under it." (At 124.)

Since the debtor's estate continues to "receive benefits" under the over-all sale contract, petitioner argues that his claim falls within the scope of the last portion of this language.

From the very language above quoted, however, it is clear that the Ar-rivabene case is only applicable where an executory contract is involved. Here, the Referee ruled and the parties concede, at least for purposes of this argument, that the consulting agreement is not an executory service contract. That the consulting agreement is, in substance, merely a liquidated portion of the total consideration received by petitioner for the sale of his trucking business interests may further be conceded.

Nevertheless it is clear that rather than a cost of "preserving the estate subsequent to filing the petition" (as is required by § 64a(1)), this contract price here in issue was a cost of *creating* the estate *prior* to filing the petition. As such, this debt is no different in kind than the classic claim of an ordinary unsecured creditor entitled to a fractional pro rata bankruptcy dividend.

Here, the estate is and, since the original filing, has been intact, regardless of how petitioner is hereafter paid under the consulting agreement. Petitioner is not required to furnish goods or services at this point, nor is he at liberty to withdraw from the estate any of the business assets earlier transferred before the date of filing. No advances of goods or services were or are necessary to preserve that portion of the estate held by the debtor as a result of his dealings with petitioner.

Consequently, petitioner's equitable standing is no more attractive than that of any other unsecured creditor. Even under his own theory, petitioner stands in the same posture as would any merchant who delivered goods on credit before a bankruptcy filing by the buyer and retained an unsecured claim for the sale contract price. The argument that the bankrupt estate would not be what it is but for the uncompensated contributions of petitioner is undoubtedly accurate, but can be asserted with equal force and validity by all other unsecured creditors whose claims arise from their uncompensated provision of goods (or intangible rights such as operating authorities).

In substance, petitioner's argument does not address itself to § 64a(1) at all. Essentially, petitioner is asserting the principles underlying the recognition in bankruptcy of a purchase money security interest. His problem is that he knowingly and consciously declined to obtain such an interest at the crucial time of contracting. Now he is bound by and limited to the bundle of rights he chose.

"Bankruptcy does not provide a forum for the realignment of rights or priorities but serves only as a forum for the recognition of rights already acquired." In re Credit Indus. Corp., 366 F.2d 402 (2nd Cir. 1966), at page 407.

The whole spirit and rationale of Chapter XI of the Bankruptcy Act is that honest but over-pressed debtors should be allowed, upon meeting statutorily prescribed conditions, to consolidate their obligations, make an equal distribution of fractional payments in satisfaction of those obligations, and gain the opportunity to continue in business. Surely, a kind of "unjust enrichment" necessarily flows to the debtor in such circumstances, but this is the course charted by Congress.

The bankrupt in these proceedings has satisfied the Chapter XI conditions precedent to confirmation of a Plan of Arrangement. This court finds no justification in extending special treatment to this petitioner as against all other unsecured creditors similarly situated.

Accordingly, it is the judgment of this court that the Referee did not err in his ruling denying Henry T. Winchester a priority on his $18,000 claim under the consulting agreement of September 24, 1968. The Referee's decision of October 15, 1971 is affirmed.

It is so ordered.

## ON MOTION FOR REHEARING

Petitioner is a creditor seeking a priority for his $18,000 claim against the debtor-bankrupt in bankruptcy proceedings before this court. The Referee in Bankruptcy denied his claim on October 15, 1972, which decision this court affirmed on February 12, 1972. The facts relevant to petitioner's claim are fully set forth in the opinions rendered in conjunction with these earlier decisions.

Petitioner has again come before this court by way of his February 23, 1972 motion for rehearing. As basis for this motion, petitioner cites two instances of purported error in the court's factual characterization of the circumstances underlying his claim. In the first place, petitioner takes exception with the court's statement in its February 12, 1972 opinion that the consulting agreement prompting the relevant debt was, as the Referee ruled, not executory. Petitioner notes that actually all that the Referee held and all that can be fairly stated is that the contract in question was not executory as to petitioner's performance—that the debtor's performance was, in fact, executory, since he was to make payments over a prospective five-year period. Secondly, petitioner argues that the court was inaccurate when it made the factual observation that he, the petitioner, deliberately and knowingly arranged to have the debtor's obligations under the consulting agreement left unsecured.

The points raised by petitioner's motion are illustrative of the pitfalls which too often attend the use of general descriptive labels. They also are representative of the manner in which substance can be misleadingly obscured by irrelevance.

With regard to the first subject, whether a given contract is "executory" depends, it may be conceded, upon the functional characteristics of that contract relevant to a given problem context. It is true that the Referee held, strictly speaking, merely that the consulting agreement was not the *type* of executory contract which could be rejected by the debtor under section 313 of the Bankruptcy Act, since it was not executory as to petitioner's obligations. In this judgment the court has con-

curred. Whether this judgment permits the more general assertion that the whole agreement is not "executory" is admittedly challengeable but nevertheless clearly irrelevant to petitioner's persistent claim for a section 64a(1) priority.

Petitioner expresses the fear that the court's use of the term "executory" had led it to improperly dismiss his major case authority, American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, 280 F.2d 119 (2nd Cir. 1970). Upon careful reconsideration, this court remains fully convinced that the reasoning and holding of Arrivabene do not support petitioner's claim to priority. Even if the debtor's obligation to pay was "executory," the "continuing benefits" theory of the Arrivabene case is no less inapplicable.

In its opinion of February 12, the court did not dismiss the rationale of Arrivabene on the mere basis of labels. Rather, it noted (and here affirms) that the whole logic and rationale of that case is inapplicable to factual circumstances wherein the creditor claiming a right to section 64a(1) priority is bound to no contract duty to perform services during the pendency of bankruptcy proceedings.

Each step in petitioner's argument on this central point appears to be formulated without sufficient regard to the substance of previous steps. To say, broadly, that a given contract can be called "executory," to then say that this circumstance permits an abstract analysis of the contract in search of beneficial consequences enjoyed by the bankrupt by virtue of the contract even after the filing of a bankruptcy proceeding, and to then conclude that the demonstrated existence of such consequences warrants full priority for the creditor's claim as an administrative expense of the debtor is wholly unfounded. "Continuing benefits" is not a standard pulled out of the air but, rather, a reference to ongoing performance by a creditor, during bankruptcy, which benefits the debtor-bankrupt and results from the creditor's executory contract obligations.

The only executory obligations imposed by the consulting agreement in the present case fell upon the shoulders of the bankrupt, not the petitioner-creditor. Hence, this contract was not executory in the sense required to establish a section 64a(1) priority for petitioner's claim under that contract.

Petitioner has argued and the court has previously accepted the proposition that the $18,000 consideration promised in the consulting agreement was a part of the broader contract of sale of petitioner's business assets to the debtor. As explained in this court's earlier opinion, however, this fact is of no assistance to petitioner, in the judgment of the court. Even viewing the entire sale transaction, the court finds no executory obligations upon petitioner which required any transfer of benefits after the debtor's bankruptcy filing. All assets were transferred before that time. The facts that the bankrupt held these previously transferred assets after bankruptcy proceedings had commenced on his Chapter XI petition and that he benefitted from this possession do not elevate his earlier promised consideration to the special status accorded administrative expenses of a bankrupt by section 64a(1).

Whether goods, rights and/or property interests are consumed before the commencement of bankruptcy proceedings or not, if they are transferred on credit before such proceedings, the party transferring them merely holds the status of a general creditor unless he can show a security lien or some other special claim under section 64. Such party can not merely point to the debtor's surviving use and enjoyment of the sold materials and claim administrative expense.

In the body of his second stated objection to this court's February 12, 1972 opinion, the petitioner himself notes that the factual circumstances surrounding his failure to obtain security for his

consulting fee are really apart and aside from the point of his claim for priority. The court finds as a matter of law that regardless of petitioner's motives or the depth of his understanding, he did not obtain and does not presently assert any superior rights by way of a security interest.

In short, the court's use of the characterization "executory contract," even if inappropriately loose, was not a part of the essence of its February 12, 1972 opinion, nor was its observations on the circumstances relevant to petitioner's failure to obtain a security interest. Therefore, since the court is firmly persuaded that any hearing which would further develop the facts alleged in petitioner's motion could not alter the substantive foundation of its original order, petitioner's motion for rehearing is hereby denied.

It is so ordered.