**In re ENRIQUE M. LOPEZ, M.D.S.C., an Illinois Professional Corporation, d/b/a Northwestern Medical Center, Debtors(s).**

**Bankruptcy No. 88 B 02566.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 10, 1988.

**156**

Glenn R. Heyman, David K. Welch, Dannen, Crane, Heyman & Simon, Chicago, Ill., for debtor.

Sheldon Solow, Sachnoff, Weaver & Rubinstein, Chicago, Ill., for Dr. Giulio Bruni.

Clifford L. Meacham, Asst. U.S. Trustee, Dept. of Justice, Chicago, Ill., for U.S. Trustee.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtor, Enrique M. Lopez, M.D.S.C., an Illinois Professional Corporation, doing business as Northwestern Medical Center, filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code on February 19, 1988. Dr. Giulio Bruni has moved to set a time for assumption or rejection of executory contracts, including an Asset Purchase Agreement. The Debtor responded that the Asset Purchase Agreement was not an executory contract on the date the bankruptcy petition was filed and therefore, assumption or rejection is not required. The Court holds that the Agreement was and is executory and therefore grants Dr. Bruni's Motion.

On January 3, 1986, the Debtor entered into an Agreement with Dr. Bruni for the purchase of Northwestern Medical Center, a medical practice then operated by Dr. Bruni. The transaction consisted of a lease for the premises on which the medical practice had been and was to be operated, and an Asset Purchase Agreement that effectively transferred all components of the medical practice from Dr. Bruni to the Debtor. That Agreement is the subject matter of this contested matter. The major parts of the Agreement are as follows:

1. The Agreement provides for the sale of the physical assets of the practice for $350,000 to be paid over ten years. Evidence of title to the assets was transferred to an escrow agent, who is not to transfer title to Dr. Lopez until the price is paid in full.

2. The Agreement also provides that Dr. Bruni will not practice medicine "within a radius" of 15 miles from the Medical Center for five years. Dr. Lopez is to pay $150,000 over ten years for this covenant.

3. Dr. Bruni is required to provide consulting services, for a period of ten years. Dr. Bruni is to be paid $200,000 over ten years for this consulting agreement.

4. Dr. Lopez is obligated to perform the following tasks:

—Make all payments under the contract,

—Collect and remit to Dr. Bruni all accounts receivable for services rendered before the date of closing,

—Provide medical services six days and five nights per week,

—Maintain a twenty four hour answering service,

—Take responsibility for all night and hospital calls,

—Maintain insurance,

—Refrain from competing in the event of a breach by the Debtor.

The Debtor makes three arguments: First, the Agreement is not an executory contract because any duties still to be per-

formed are not substantial, but only ministerial. Second, each of the principal components of the Agreement (e.g., the purchase of assets, the seller's covenant not to compete and the consulting agreement) should be viewed as a separate contract for purposes of deciding whether it is executory and must be assumed or rejected. Third, Dr. Bruni breached the Agreement before the Debtor filed his bankruptcy petition and, as a result of those breaches, the Debtor was relieved of any further performance obligations. The Agreement, therefore, was no longer executory (if it ever was) when the petition was filed.

Based upon the terms of the Agreement and the parties' Memorandum of Law, the Court decided the first two issues in favor of Dr. Bruni and against the Debtor, announcing that decision in open Court.

■ With respect to the Debtor's contention that the agreement is actually three separate contracts and the Debtor should be allowed to exercise his right to assume or reject each independently if they are found to be executory, it is true that setting forth the terms of a transaction in only one document does not preclude the existence of several contracts. *In re Gardinier, Inc.*, 50 B.R. 491 (Bankr.M.D.Fla. 1985). The test is whether each "distinct" part of the Agreement could and was intended to be performed independently. *See, e.g., Trapkus v. Edstrom's, Inc.*, 140 Ill.App.3d 720, 95 Ill.Dec. 119, 489 N.E.2d 340 (1986).

The Agreement here reflects an intent that its various components not be performed independently, but that they be viewed as part of a single transaction. It is unrealistic to say that the parties in the case at bar intended the covenant not to compete to be performed without reference to the sale of assets. There would be no purpose for the covenant not to compete absent the Debtor's purchase of assets. Similarly, the purchase of the assets becomes relatively meaningless without the other portions of the Agreement. In the smaller offices of the professional disciplines it is axiomatic that the practitioner is the practice. The Agreement reflects an intent to buy a practice. That includes, not only physical assets and good will (in the narrow sense), but also Dr. Bruni's reputation, his past and continuing association with the medical center, the continued patronage by his former patients and the fees they will generate. Very little if any of this value would be realized by Dr. Lopez if Dr. Bruni were permitted to practice medicine in competition with Northwestern Medical Center. The value would also be diminished if Dr. Bruni did not consult with Lopez when requested as required by the Agreement. Therefore, the various sections of the Agreement are intimately bound with one another. The sections of the Agreement are really integral parts of one contract.

The separate payment provisions, without more, do not make the three parts of the transaction separate contracts. As the Debtor has said, the separate payment provisions for the noncompetition covenant and the consulting agreement are methods to spread the payments for the practice over a ten year period to take advantage of tax and other financial considerations. The plain language of the agreement indicates that the parties' intentions were twofold. First, the parties intended that Dr. Lopez should be given the full value of the medical center for his purchase price. As mentioned above, that value includes Dr. Bruni's reputation and his familiarity with the practice and patients. The value can only be realized when Dr. Bruni refrains from competing and when he offers his consulting services. On the other hand, the deal was structured to maximize the financial benefits of both parties. The timing of the payments, matching payments with specific consideration, and to some extent the amount of the payments reflects these financial considerations. Both of these intentions indicate that all sections of the agreement exist only as one contract.[1]

---

1. Article XII of the Agreement also reflects the parties' intent that there be one contract. This Article provides the buyer with a means for automatic financing of the sale. In Article XII, the buyer is obligated to pay 40% of his net monthly income to the seller. Net income is

█ The Court has also rejected the Debtor's contention that the Agreement, viewed as a single contract, is not an executory contract. Generally, a contract is executory if "the obligations of both the bankrupt and the other party to the contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other". Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973).

The Agreement contains material performance obligations on both sides. Dr. Bruni is required to transfer title to the assets. Contrary to the Debtor's arguments, transfer of title to the assets after full payment has been received by the seller is not merely a ministerial task, even if all evidence of title is held by an escrow agent after closing and before full payment is made. *Shaw v. Dawson,* 48 B.R. 857, 861 (D.N.M.1985); *Countryman,* 57 Minn. L.Rev. at 469–70.

The Agreement also requires Dr. Bruni to provide consulting services. The Debtor cites *In re Michigan Express, Inc.,* 339 F.Supp. 266 (W.D.Mich.S.D.1972) for the proposition that a contract which allows a party to refuse performance is not executory. But here, the Agreement excuses performance of the consulting services only in the event of Dr. Bruni's death or his unavailability due to illness.[2] If Dr. Bruni's consulting services were requested and he refused to perform at any time for reasons other than those specified, Dr. Bruni would be in default.

Dr. Bruni also remains obligated under his covenant not to compete. Approximately three years remain of the five years Dr.

Bruni is prohibited from practicing medicine within a 15 mile radius of the medical center.

Finally, the Debtor's obligations under the contract also remain unfulfilled. The Debtor is still required to make the payments due under the contract, maintain insurance, and operate the medical center during specified hours. *Cf. In re The Record Co., Inc.,* 8 B.R. 57 (Bankr.S.D.Ind. 1980).

The Court having decided against the Debtor on these two issues, it became necessary to address the third: Whether Dr. Bruni had materially breached the Agreement before this case was commenced so that the Debtor was relieved from its obligations under the Agreement. The Court held an evidentiary hearing and the following findings of fact and conclusions of law are based on the evidence presented at that hearing, as well as the parties' stipulations and written closing arguments.

"[E]xecutory contracts involve obligations [that] continue into the future." *In re Jolly,* 574 F.2d 349, 351 (6th Cir. 1978). A material breach by one party to a contract may relieve the other of his future obligations. Restatement (Second) Contracts, § 237 (1981). If such a material breach occurred before bankruptcy, the contract may not be executory because it then may impose no further obligations. See, *Jolly,* 574 F.2d at 351; *Tobin v. Plein,* 301 F.2d 378, 381 (2nd Cir.1962); *In re Murtishi,* 55 B.R. 564, 568 (Bankr.N.D.Ill. 1985). Whether a material breach does relieve the non-defaulting party of future obligations depends upon how that party treated the breach. Generally, such a breach presents the non-defaulting party

defined as cash receipts less cash disbursements plus cash disbursements to Drs. Bruni and Lopez. The 40% of net monthly income figure is not to exceed $8074.43 and is not to be less than $7500. If the 40% of net monthly income figure falls below $8000, the deficiency is to be made up in a month in which the 40% of net monthly income figure is above $8074.43. Purposefully, $8074.43 is the sum of the monthly payments due under the asset sale clause, the covenant not to compete and the consulting clause. The obvious intent of the section is to provide Bruni with a steady monthly income and to allow Dr. Lopez a stable method for paying off his debts

to Dr. Bruni. This section binds together the individual payments into one payment for the entire medical practice and indicates the parties' intent to strike one comprehensive deal.

**2.** It should be noted that the fact that payments for consulting services are to be made even if Dr. Bruni dies is further indication that the Agreement reflects a single, interrelated transaction. Obviously, the consulting fee is simply part of the total price for the practice, not independent consideration for consultations.

with "a unilateral option to treat his own obligations under the contract as discharged and claim damages for the breach or to waive the breach and treat the contract as still in effect." *In re Alexander,* 670 F.2d 885, 887 (9th Cir.1982), quoting Countryman, *Executory Contracts in Bankruptcy: Part II* 58 Minn.L.Rev. 479, 506–07; *see also,* Restatement (Second) Contracts, § 243, Comment (a). Here, it is unnecessary to consider how the Debtor dealt with the alleged breach, because the Court concludes that, although there was a breach, it was not material, and, therefore, could not have excused future performance by the Debtor in any event.

■ The Debtor contends that Dr. Bruni breached the Agreement in two respects: first, that Dr. Bruni breached his covenant not to practice medicine within a radius of 15 miles from the medical center; second, that Dr. Bruni misrepresented that he had title to all the assets sold under the Agreement.

The Court finds that Dr. Bruni did breach his covenant not to compete. After leaving the clinic, Dr. Bruni entered into discussions with a Dr. Walchinsky about the formation of a diagnostic center. During the time those discussions were going on, Dr. Bruni consulted with Dr. Walchinsky at the latter's office concerning between 15–20 patients over a period of several months. Dr. Bruni examined some of these patients himself.

Dr. Bruni had admitting privileges at Lakeside Hospital and admitted and medically examined at least 24 patients at the hospital. Although these may have been patients of Dr. Walchinsky, they were admitted by Dr. Bruni who bore responsibility for their care, as evidenced by discharge summaries he either signed or approved. At least so far as the hospital is concerned, Dr. Bruni was the "attending physician."

Further, in October and November of 1987, Dr. Bruni attended to Dr. Walchinsky's medical office while Dr. Walchinsky was on vacation. He did this for a total of about three weeks, seeing people who came to the office without appointments. He saw at least 15 patients and on occasion prescribed medication.

Finally, Dr. Bruni saw four patients at his home. These were former patients or friends of his, with whom he had long standing relationships.[3]

Dr. Bruni argues that these activities do not constitute the practice of medicine for essentially two reasons: first, they were infrequent occurrences, particularly compared with the number of patients Dr. Bruni saw when he was in active practice at the medical center; second, Dr. Bruni received no compensation for any of these activities. Dr. Bruni cites authority for the proposition that to constitute the practice of medicine, a doctor's professional activities must be systematic, habitual or frequent. *Greenfield v. Getman,* 140 N.Y. 168, 35 N.E. 435 (1893); *Oates v. Leonard,* 191 Iowa 1004, 183 N.W. 462 (1921). While these authorities suggest (and the Court agrees) that something more than an occasional or incidental act is necessary to constitute a practice, they are not otherwise helpful in determining how frequent such activities must be in order to constitute "the practice of medicine" within the meaning of the covenant here.

Dr. Bruni's activities involved the exercise of his medical skills on more than an occasional or incidental basis. He admitted and examined 24 patients at Lakeside Hospital alone, and saw perhaps two or three dozen others at Dr. Walchinsky's office. Although the number of patients he saw after leaving the medical center may have been small in comparison with the number he saw while he was at the medical center, that is not the determinative factor. His

---

3. The Debtor contends that Dr. Bruni also officed and practiced with a Dr. Basta at Leyden Hospital. Dr. Bruni denied ever having examined patients there. The Debtor offered no admissible evidence in support of this contention. The Debtor did prove that Dr. Lopez (using a fictitious name) made a telephone call to Ley-

den Hospital during which he spoke with an unidentified person who gave him an appointment with Dr. Bruni. But to the extent that evidence was offered to prove the contention that Dr. Bruni officed with Dr. Basta at Leyden Hospital, the evidence was excluded on Dr. Bruni's timely hearsay objection.

activities were sufficient to create at least the risk that people in the pertinent market area would believe that he was in active practice with Dr. Walchinsky and that they could avail themselves of Dr. Bruni's medical services at either Dr. Walchinsky's office or Lakeside Hospital. Nor were his activities any less the practice of medicine because he did not get paid for them. Doctors who volunteer their services are still doctors. Therefore, it must be concluded that Dr. Bruni was practicing medicine when he engaged in these activities.

Lakeside Hospital, Dr. Walchinsky's office and Dr. Bruni's home are all within a radius of 15 miles from the medical center. Although Dr. Bruni claims Lakeside Hospital cannot be reached by car except along a route that is longer than 15 miles, the covenant not to compete limits his activities within a "radius" of 15 miles, not a driving distance of 15 miles. Therefore, the Court finds that Dr. Bruni breached the covenant not to compete in that he practiced medicine within a radius of 15 miles of the medical center within 5 years after the date of the Agreement.

Finding that Dr. Bruni breached the Agreement does not end the inquiry, however. The Debtor's position is that the breach was sufficiently material to relieve the Debtor of further obligations under the Agreement. The Court finds that the breach was not such a material breach.

The Agreement itself does not state that compliance with the covenant not to compete is a condition precedent to the Debtor's performance. Therefore, the question is whether the breach is sufficiently material under Illinois law to justify non-performance. "[O]nly a material breach of the contract by one party will justify non-performance by the other." *Eastern Illinois Trust & Sav. Bank v. Sanders*, 631 F.Supp. 1393, 1396 (N.D.Ill.1986). "A minor breach is compensable in damages but will not generally give rise to a cause of action on the entire contract, nor excuse the non-breaching party's duty of counterperformance." *Circle Sec. Agency, Inc. v. Ross*, 107 Ill.App.3d 195, 202–03, 63 Ill.Dec. 18, 437 N.E.2d 667, 672 (1st Dist.1982).

*See also*, Restatement (Second) of Contracts, §§ 237, 241 (1981).

There is no doubt, as the Debtor contends, that the covenant not to compete is a material provision of the Agreement. But that alone does not make Dr. Bruni's breach material. In general, as applicable here, the considerations determining whether a breach is sufficiently material to justify nonperformance include; (1) the extent to which the breach defeated the benefit for which the Debtor bargained; (2) the extent to which the Debtor may be compensated for any part of the bargained-for benefit of which the Debtor was deprived; (3) the extent to which the breach caused disproportionate prejudice to the Debtor; (4) the extent to which Dr. Bruni will suffer forfeiture and the Debtor will realize an unreasonable or unfair advantage; and (5) the likelihood that Dr. Bruni will cure his breach. *Eastern Illinois Trust & Sav. Bank*, 631 F.Supp. at 1396; Restatement (Second) of Contracts, § 241.

Applying these considerations here, Dr. Bruni's breach is not material. Dr. Bruni's breaching conduct was not so frequent, public or established to constitute a substantial threat to the business of the medical center. There is no showing that Dr. Bruni attempted to, or did, divert patients away from the Debtor. Consequently, there has been no showing that the Debtor has been deprived to any significant degree of the benefit the Debtor expected to derive from the Agreement. Further, the Debtor has not shown any damage resulting from the breach, but, to the extent that it could show such damage, it could be compensated for those damages.

Moreover, it is plain that excusing performance by the Debtor would work a substantial forfeiture and prejudice to Dr. Bruni, while the Debtor has suffered, at most, minimal harm. Finally, there is no showing that Dr. Bruni is continuing to breach the covenant but, even if there were, an injunction could be entered preventing any future harm and assuring compliance with the Agreement.

Since Dr. Bruni's breach of the covenant not to compete was not material, the Debt-

or was not excused by that breach from further performance of its obligations under the Agreement.

Alternatively, the Debtor contends that Dr. Bruni breached the Agreement by falsely representing that he had title to the assets sold under the Agreement. This allegation is based upon evidence that Dr. Bruni leased some of those assets.

It appears that the leases of the assets were financing leases under which Dr. Bruni has the right to obtain title by paying money to the lessors. The Agreement does not require the actual conveyance of title until the Debtor has paid in full. There has been no showing that the Debtor has been deprived of the use of any of these assets and no showing that the Debtor will not receive title to the assets at the time called for in the contract. The Court therefore concludes that any breach of the representation of title is, at best, technical and not sufficiently material to excuse the Debtor's future performance.

For these reasons, the Motion of Dr. Bruni to set a time within which the Debtor may assume or reject the Agreement is granted. An Order will be entered requiring the Debtor to assume or reject the contract within thirty days.