**In re Alton L. ANNABEL, Victoria L. Berggren, Debtors.**

No. 00–61961.

United States Bankruptcy Court, N.D. New York.

Jan. 10, 2001.

---

Frank A. Bersani, Jr., Syracuse, NY, for Creditor.

Holmberg, Galbraith, Holmberg, Galbraith, Van Houten & Miller, Ithaca, NY, Matthew Van Houten, of counsel, for Debtor.

L. David Zube, Binghamton, NY, Chapter 7 Trustee.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Currently before the Court is the October 17, 2000 Motion by creditor Michael J. Maggio, D.C. ("Maggio") pursuant to § 362(d) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code") for Relief from the Automatic Stay seeking relief to pursue a contract claim in state court arising from the alleged breach of a pre-petition contract between Maggio and Alton L. Annabel, the co-debtor herein ("Debtor"). The Court notes at the outset that Maggio's motion appears moot since an Order of Discharge was entered in the Debtor's chapter 7 case on August 2, 2000, thus terminating the automatic stay and imposing a discharge injunction pursuant to Code § 524. *See* Code § 362(c)(2)(C). The Court will nonetheless entertain the motion as one for relief from the discharge injunction. *See In re Cox,* 53 B.R. 829, 830 (Bankr.M.D.Fla.1985).

The Debtor filed an Affidavit in Opposition on November 8, 2000. Oral argument was heard on November 14, 2000 at a motion term held in Utica, New York at which time the parties were afforded the opportunity to submit supplemental memoranda. On November 29, 2000 Maggio submitted a letter-brief in support of his position and the Debtor submitted his supplemental opposition memorandum on November 30, 2000. Limited oral argument was heard at a motion term held in Utica, New York on December 12, 2000, at which time the matter was submitted for decision.

### *JURISDICTION*

The Court has core jurisdiction over the parties and the subject matter of this contested matter pursuant to 28 U.S.C.

§ 1334 and 28 U.S.C. § 157(a), (b)(1) and (b)(2)(A), (G) and (O).

### FACTS

On June 3, 1998, Maggio entered into a Contract of Sale ("Annabel–Maggio Contract") with the Debtor for the sale of Maggio's chiropractic practice operated as Lakeside Family Chiropractic in Ithaca, New York. Included in the Annabel–Maggio Contract were the practice's assets, a covenant not to compete and the "Seller's assistance in transfer." Motion by Michael J. Maggio, D.C., for Relief from the Automatic Stay ("Maggio Motion"), Exhibit A, at 1. The assets of the practice included accounts receivable, chiropractic equipment, business machines, office furniture, supplies, patient files, x-rays and leasehold improvements to the Lakeside Family Chiropractic office. The covenant not to compete, which is the subject of this motion, reads as follows:

5.) COVENANT NOT TO COMPETE: Seller [Maggio] shall not engage in the practice of chiropractic except as Buyer's [Debtor's] Associate from the Closing Date of Sale, within a radial distance of twenty miles from the Practice from Date of Sale until a one (1) year period after Seller is paid off in full by Buyer. In addition, Seller agrees not to solicit any patients with Seller's Practice and Seller further covenants that he will not, during the term of this Covenant, directly or indirectly, induce any of his former patients of the referring sources of the Seller's practice to patronize or recommend patronizing any other Chiropractor other than the Buyer and/or Buyer's Associate. In the event of breach or threatened breach hereunder, Seller agrees that Buyer's remedy at law (e.g. money damages) shall be inadequate and Buyer will be entitled to appropriate injunctive relief in addition to any legal remedies.

Should the foregoing covenant be adjudged to any extent invalid by any competent tribunal, such covenant shall be deemed modified to the extent necessary to make it enforceable. If Buyer becomes Sixty (60) days in arrears on payments he will be in default and subject to standard foreclosure procedures, and the Seller may also retake lease of space, any payments due to Buyer, equipment leases, retake accounts receivable, plus all accounts receivable accrued by Buyer, and be allowed relief from covenant not to compete. Then the Buyer shall not practice within a 20 mile radius of the office for a period of two (2) years. Should Buyer move the practice to a new location, he shall still be responsible for all liabilities of the practice and this contract of sale.

*Id.* at 2. Finally, the "seller's assistance" included not only a six-week period where Maggio assisted the Debtor's indoctrination, but was later memorialized by an addendum to the original Annabel–Maggio Contract providing for Maggio's continued consulting services to the practice for three years beginning on January 3, 1999. Consideration for the contract and addendum included a loan to the Debtor by Maggio in the sum of $150,000.00 amortized at $2,490.18 per month for 84 months. Under the addendum, Maggio was also to receive $120,000.00 payable in 36 monthly installments of $1,000.00 each followed by a balloon payment for the remaining balance at the end of the 36 month period.

The Debtor filed for protection under chapter 7 of the Code on April 19, 2000. It appears that on or about April 20, 2000, Maggio filed a Summons and Complaint in New York State Supreme Court, Tompkins County ("state court action") seeking enforcement of his state court remedies against the Debtor's alleged breach of the Annabel–Maggio Contract. *See* Affidavit

in Support of Maggio's Order to Show Cause Lifting Bankruptcy Stay ("Maggio Order to Show Cause"), Exhibit A. In the Complaint Maggio alleged that the Debtor had defaulted on the Annabel–Maggio Contract in January 2000 and sought repossession of the practice under the terms of the contract. *See id.* Following the commencement of the state court action, the Debtor was ordered to show cause on April 25, 2000, why he should not be preliminary enjoined from continuing the chiropractic practice in light of his alleged breach of the Annabel–Maggio Contract. *See id.* Having been advised of the imposition of the automatic stay, Maggio then obtained an Order to Show Cause from this Court on April 26, 2000 for an Order Lifting the Automatic Stay for the purpose of a "repossession of the chiropractic practice and assets thereof..." Affidavit in Support of Maggio Order to Show Cause, ¶ 13. After hearing oral argument, this Court entered an Order on July 20, 2000, denying the relief sought by Maggio. As indicated on August 2, 2000, an Order of Discharge was entered in the Debtor's chapter 7 case.

On October 17, 2000, Maggio filed the instant Motion for Relief from the Automatic Stay. In this motion, rather than seeking repossession of the chiropractic practice, Maggio seeks to enforce his state court remedies against the Debtor's alleged breach of the covenant not to compete. Maggio alleges that since his discharge, the Debtor continues operating a chiropractic facility from the same location as the Lakeside Family Chiropractic in breach of the covenant not to compete. Specifically, Maggio contends that he is "entitled" to an order lifting the automatic stay "so that he may pursue injunctive relief and other relief for breach of contract and possibly fraud against the Debtor, Annabel, in State court..." Maggio Motion, at ¶ 10. In his supplemental letter-brief, Maggio maintains that although the Annabel–Maggio Contract was rejected as an executory contract in the Debtor's chapter 7 bankruptcy, "the case law is clear that rejection of an executory contract by a debtor does not affect the enforceability of a non-compete provision contained in the agreement." Letter Brief in Support of Motion to Lift the Automatic Stay, at 1.

The Debtor argues that the Annabel–Maggio Contract was an executory contract in the Debtor's chapter 7 case and, as such, was rejected in its entirety by operation of Code § 365(d)(1). The Debtor contends that because there is no evidence to support severing the covenant not to compete from the balance of the rejected contract that the covenant not to compete cannot be said to have survived rejection.

## DISCUSSION

Pursuant to Code § 365(d)(1), in a chapter 7 bankruptcy if "the trustee does not assume or reject an executory contract...within 60 days after the order for relief...then such contract or lease is deemed rejected." Code § 365(d)(1). The term "deemed rejected" in § 365 has been interpreted as providing for a self-executing statute of limitations on the trustee's time to act in assuming an executory contract. *See Arizona Appetito's Stores, Inc. v. Paradise Village Investment Co. (In re Arizona Appetito's Stores, Inc.),* 893 F.2d 216, 219 (9th Cir.1990). *See also, Charter Asset Corp. v. Victory Markets, Inc. (In re Victory Markets, Inc.),* 221 B.R. 298, 302 (2d Cir. BAP 1998).

■ In the instant case, the parties do not dispute that the Annabel–Maggio Contract was executory nor do they dispute that the chapter 7 trustee did not assume the contract within the proscribed 60–day period. In this regard, the Annabel–Mag-

gio contract was "deemed rejected" by operation of Code § 365(d)(1) on or about June 18, 2000. *See Medical Malpractice Ins. Assoc. v. Hirsch (In re Lavigne),* 114 F.3d 379, 385 (2d Cir.1997). Thus, the question before this Court is not whether the Annabel–Maggio Contract is executory or at what point was the Contract rejected, rather the question before this Court is whether a covenant not to compete survived the rejection of the contract. On the particular facts in this case, this Court finds that it did not.

Maggio relies on *In re Noco* in support of his contention that covenants not to compete are severable from a rejected executory contract. *See In re Noco, Inc.,* 76 B.R. 839 (Bankr.N.D.Fla.1987). *In re Noco* involved a chapter 11 debtor's rejection of a franchise agreement containing a covenant by the debtor not to compete with the franchisor. *See id.* at 840–841. The court employed what it called the "dual obligation test," which looks to the remaining obligations of the parties to a contract to determine whether it is executory or not. *See id.* at 843. The subject contract, a franchise agreement, was nearly completed when the debtor filed a chapter 11 petition. *See id.* The *In re Noco* court found that under the contract both the debtor's and the franchisor's obligations were performed to near completion with the only remaining performance obligation being the debtor's obligation not to compete with the franchisor. *See id.* at 841–842. In addition, the debtors freely admitted that they filed bankruptcy for the sole reason of avoiding the covenant not to compete. *See id.* at 842. The court held that because "[i]t is this one remaining obligation which the debtors seek to reject[,]...[t]his Court does not deem this agreement "executory" and subject to rejection." *See In re Noco, Inc.,* 76 B.R. at 843.

While the court in *In re Noco* found the debtor's remaining performance obligation under the covenant not to compete to be non-executory, thus unavailable for rejection, the analysis employed by the court in reaching that conclusion simply does not favor Maggio. That court based its decision on the fact that the sole remaining obligation under the franchise contract was the debtor's obligation not to compete with the franchisor. This holding comports with the findings of those courts that have held a contract not to compete to be non-executory where the covenant not to compete is the entire, bargained-for contract. *See In re Schneeweiss,* 233 B.R. 28 (Bankr. N.D.N.Y.1998, J. Gerling) (finding contract non-executory where only obligation was to comply with a restrictive covenant not to compete); *In re Drake,* 136 B.R. 325 (Bankr.D.Mass.1992) (holding that "the contract does not contain the continuing mutual obligations necessary to constitute an executory contract"). In the instant case, though, substantial obligations remained unperformed by both the Debtor and Maggio at the time the Debtor filed his chapter 7 petition. Specifically, the Debtor's payment obligation remained substantially unperformed, but so too did Maggio's obligation not to compete with the Lakeside Family Chiropractic under his separate covenant, as well as his consulting obligations under the contract addendum. As such, the "dual obligation" analysis employed by the court in *In re Noco* is simply not applicable to support Maggio's severability argument. In addition, all three decisions cited by Maggio. *In re Noco, cited supra, In re Carrere,* 64 B.R. 156 (Bankr.C.D.Cal.1986) and *In re Rovine,* 5 B.R. 402 (Bankr.W.D.Tenn.1980) were chapter 11 reorganization cases whose rulings were limited to the usual pedantic analysis of the subject contract's "executoriness" within the meaning of

Code § 365.[1] This analysis is only half the equation, as more fully discussed *infra*.

Alternatively, there exists a line of cases holding that where a covenant not to compete is intertwined with the other bargained-for performance obligations in an executory contract, the contract must be rejected or accepted in its entirety. *See Silk Plants, Etc. Franchise Sys., Inc. v. Register (In re Register)*, 100 B.R. 360 (M.D.Tenn.1989) (affirming bankruptcy court finding that covenant not to compete was not severable from franchise agreement for acceptance or rejection rather was part of a single contract rejected in its entirety); *JRT, Inc. v. TCBY Sys., Inc. (In re JRT, Inc.)*, 121 B.R. 314 (Bankr. W.D.Mich.1990) (holding that covenant not to compete in franchise agreement is an "integral, non-divisible part of the executory franchise agreement; therefore...may be rejected"); *In re Lopez, M.D.S.C.*, 93 B.R. 155 (Bankr.N.D.Ill.1988). It is this line of cases that more squarely comports with the case presently at bar.

In *In re Lopez*, cited *supra*, the Bankruptcy Court for the Northern District of Illinois addressed the issue currently before this Court in a chapter 11, rather than a chapter 7, context. *See In re Lopez, M.D.S.C.*, 93 B.R. 155 (Bankr.N.D.Ill. 1988). The debtor in *Lopez*, a medical doctor, entered into a contract with another doctor, Dr. Giulio Bruni ("Bruni") in January 1986 for the purchase of the Northwest Medical Center, the medical practice owned and operated by Bruni. *See id.* The sale "effectively transferred all components of the medical practice from Dr. Bruni to the Debtor." *Id.* The contract, much akin to the Annabel–Maggio Contract, included an itemization detailing the price breakdown for each component of the medical practice to be paid by the debtor to Bruni over a ten year period. *See id.* For example, $350,000.00 of the purchase price was attributed to the "physical assets of the practice", $200,000 was a fee to retain Bruni as consultant to the practice and $150,000 "provide[d] that Dr. Bruni will not practice medicine 'within a radius' of 15 miles from the Medical Center for five years." *Id.* at 156. *See also*, Maggio Motion, Exhibit A, at 2, 7("A.) Chiropractic equipment, business machines and furniture, $20,000.00"; ("C.) Covenant not to compete, $5,000.00"; ("[C]onsulting services to be provided by Michael Maggio, D.C., over the next three years on an as-needed basis").

When the debtor filed a chapter 11 petition in February 1988, Bruni moved to set a time for assumption or rejection of the contract as an executory contract. *See In re Lopez, M.D.S.C.*, 93 B.R. at 155. The debtor argued, similar to Maggio's argument, that "each of the principal components of the [a]greement (e.g., the purchase of assets, seller's covenant not to compete and the consulting agreement) should be viewed as a separate contract for the purposes [sic] of deciding whether it is executory and must be assumed or rejected." *Id.* at 157 (parenthetical in original). The court considered whether the contract, as drafted, was several separate contracts to be accepted or rejected or one single contract which must be either accepted or rejected in its entirety. *See id* at 157.

The court in *Lopez* found that in a contract such as one for the purchase of a

---

1. Two of the three cases cited by Maggio in support of his position, *In re Noco* and *In re Carrere* are also factually distinguishable from the instant case if for no other reason than that in each of those cases the debtor's primary, if not sole, purpose for filing bankruptcy was to avoid a covenant not to compete. No such allegation has been asserted by the Maggio nor admitted by the Debtor herein.

medical practice, "the various sections of the Agreement. are intimately bound with one another...[and are]...really integral parts of one contract." *See In re Lopez, M.D.S.C.,* 93 B.R. at 157. The *Lopez* court further opined that contracts such as these "reflect[ ] an intent that its various components not be performed independently, but that they be viewed as part of a single transaction...[and]...it is unrealistic to say that the parties...intended the covenant not to compete to be performed without reference to the sale of assets." *Id.* The court reasoned that this is necessarily so because the terms of the contract are meaningless if read or enforced individually, especially in the context of the sale of a medical practice. *See id.* In other words, the purchase of a medical practice is concomitantly the purchase of the physical assets of the practice, goodwill and the agreement not to compete, and any of those elements loses significant value absent the others. *See id.* In concluding its analysis, the court found that the fact that the contract provided for an itemized sale price for each element of the practice, in and of itself, does not render the terms of the contract severable transactions for acceptance or rejection under Code § 365.[2] *See id. See also Silk Plants, Etc. Franchise Sys., Inc.,* 95 B.R. at 74 (rejecting argument that covenant not to compete contained in franchise agreement was severable since consideration for the covenant was separate and identifiable from consideration for other contract terms).

In a similar fashion, this Court finds the terms of the Annabel–Maggio Contract to be intimately bound to one another with no apparent intention that the parties thereto intended anything other than a single, unseverable contract. Much like the contract in *Lopez,* the Annabel–Maggio Contract manifests an intention by the parties for the sale and purchase of Maggio's entire practice, rather than separate, bargained-for components of the chiropractic office. The Court is unconvinced that Maggio intended anything other than a single contract comprised of many terms, each of whose individual value is meaningless without the other terms. Thus, because the Annabel–Maggio Contract is unseverable in this regard, it is deemed rejected in its entirety by operation of Code § 365. *See In re Lopez, M.D.S.C.,* 93 B.R. at 157.

Rejection of the executory contract pursuant to Code § 365(d), however, is not tantamount to the termination of all of the rights of the parties under the contract. To the contrary, a debtor's rejection of an executory contract constitutes a breach of the subject contract, which breach, absent an earlier assumption, is statutorily deemed to have occurred immediately prior to the filing of the debtor's bankruptcy petition. *See* Code § 365(g). "Thus, the effect of a rejection is that a breach is deemed to exist which in the ordinary case will give rise to a claim for

---

**2.** In adopting the oft-quoted "Countryman" definition, the *Lopez* court went on to define an executory contract as one whose " 'obligations of both the bankrupt and the other party to the contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other.' " *See In re Lopez, M.D.S.C.,* 93 B.R. at 158 *quoting* Vern Countryman, *Executory Contracts in Bankruptcy: Part 1,* 57 Minn. L.Rev. 439, 460 (1973). The court found that the contact was executory under this definition since the material obligations of Bruni not to compete and to consult when requested had not been performed to completion. *See id.* Moreover, the debtor was obligated to, among other things, continue making payments under the contract for the duration of the agreement. *See id.* Thus, the court found that under the Countryman definition such a contract was a single, executory contract available for acceptance or rejection by the estate under Code § 365. *See id.*

damages...[and]...does not...affect the parties' substantive rights under the contract...such as the amount owing or a measure of damages for breach." 3 COLLIER ON BANKRUPTCY, 15th ed., ¶ 365.09[1], at 365–73 (2000) (footnotes omitted). In this regard then, the Court must query whether the Debtor's statutory breach of the covenant not to compete gave rise to a claim discharged under the Debtor's Order of Discharge.[3] *See Creator's Way Associated Labels, Inc. v. Mitchell (In re Mitchell)*, 249 B.R. 55, 58 (Bankr.S.D.N.Y.2000).

The August 2, 2000 Order of Discharge effectively discharged all of the Debtor's qualifying pre-petition debts. *See* Code § 727(b). The Code defines a "debt" as a "liability on a claim." Code § 101(12). A "claim" includes a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." Code § 101(5)(B). Generally, those courts that have addressed whether a chapter 7 debtor's breach of a covenant not to compete is a dischargeable claim within the meaning of Code § 101(5)(B) have done so by employing the rationale of the Supreme Court in *Ohio v. Kovacs*. *See Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985).

In *Kovacs*, the State of Ohio had obtained a pre-petition injunction against Kovacs in state court which, among other things, ordered Kovacs to clean up a hazardous waste disposal site operated by Kovacs. *See Kovacs*, 469 U.S. 274, 105 S.Ct. 705. When Kovacs' clean up obligation under the injunction went unperformed, the State obtained the appointment of a receiver to clean up the site. *See id.* at 276, 105 S.Ct. at 706. Before the receiver completed Kovacs' obligations under the state court injunction, Kovacs filed a bankruptcy petition in the Southern District of Ohio.[4] *See id.* at 277, 105 S.Ct. at 707. In Kovacs' chapter 7 case, the State of Ohio sought a judgment from the bankruptcy court declaring the pre-petition injunction non-dischargeable. *See id.* In seeking this relief, the State of Ohio argued that an injunction is neither a "debt" or a "liability on a claim" as those terms are used in the Code. *See id.* *See also*, Code § 101(5) and (12). The Court considered "whether...Kovacs' obligation under the injunction is a 'debt' or 'liability on a claim' subject to discharge under the Bankruptcy Code." *See Kovacs*, 469 U.S. at 275, 105 S.Ct. at 706. *See also*, Code § 101(5) and (12). The Court held that injunctive relief will be dischargeable where the injunction has been converted or reduced to an obligation to pay money. *See Kovacs*, 469 U.S. at 283, 105 S.Ct. at 710. The court reasoned that because the receiver had already performed Kovacs' affirmative obligation under the injunctive order, the

---

**3.** It should be noted that the Court does not address nor has it been asked to address the validity or enforceability of the covenant not to compete under New York State law. *See generally, Creator's Way Associated Labels, Inc. v. Mitchell (In re Mitchell)*, 249 B.R. 55, 58 (Bankr.S.D.N.Y.2000) ("State law, here New York, determines whether a party's breach gives rise to a right to payment") *citing In the Matter of Udell*, 18 F.3d 403, 408 (7th Cir.1994). Moreover, as the issue has been presented before this Court, a determi-

nation of breach-in-fact under this Court's jurisdiction is irrelevant since the Debtor's rejection of the Annabel–Maggio contract constitutes statutory breach by operation of Code § 365(g).

**4.** Kovacs originally filed a chapter 11 petition but sometime thereafter converted his case to a chapter 7 liquidation. *See Kovacs*, 469 U.S. at 276, n. 1, 105 S.Ct. at 706, n. 1.

sole remaining method for Kovacs to comply with the injunction was the repayment of the receiver's clean up costs. *See id.* at 275, 105 S.Ct. at 706. The Court held that the injunction was, in fact, a dischargeable claim within the meaning of Code § 101 since there was no possible way for Kovacs to "render performance under the affirmative obligation other than the payment of money." *Id.* at 281, 105 S.Ct. at 708.

While the Supreme Court was careful to limit its ruling to the facts of that case, several courts have interpreted *Kovacs* as holding that a claim on a chapter 7 debtor's breach of a covenant not to compete is dischargeable where compliance requires the expenditure of money but if, on the other hand, compliance with the covenant requires nothing more of the debtor than to refrain from conduct, then the covenant is not a debt or claim subject to discharge. *See Dent Wizard Int'l Corp. v. Brown (In re Brown)*, 237 B.R. 740 (Bankr.C.D.Cal.1999) (holding that an injunction issued on debtor's breach of a covenant not to compete does not constitute a dischargeable claim); *In re Reppond*, 238 B.R. 442 (Bankr.E.D.Ark.1999) (covenant not to compete in rejected lease is not a dischargeable claim where lessor seeks only injunctive relief); *Thomas v. Herzog (In re Thomas)*, 133 B.R. 92 (Bankr.N.D.Ohio 1991) (holding that equitable non-monetary rights for pre-petition breach of covenant not to compete in contract for sale of business are non-dischargeable). *Contra, The Maids Int'l, Inc. v. Ward (In re Ward)*, 194 B.R. 703 (rejecting *Kovacs* as "vague" and is "not binding in cases involving covenants not to compete"). In *May v. Charles Booher & Associates (In re May)*, for example, the Bankruptcy Court for the Southern District of Ohio, Eastern Division, opined that in the wake of *Kovacs*

[S]imply finding an affirmative duty to perform an act does not give rise to a nondischargeable obligation. Rather, the analysis should focus on the substance of the affirmative duty. If an expenditure of money is required to perform the obligation, then the affirmative duty gives rise to a "claim" and, thus, the underlying liability may be subject to the discharge issued pursuant to 11 U.S.C. § 727(b)...On the other hand, if no expenditure of money is required to comply with the affirmative duty under the injunction, then there may not be a "debt" in the bankruptcy context. If there is no "debt," discharge of that underlying obligation will not occur.

*May v. Charles Booher & Assocs. (In re May)*, 141 B.R. 940, 943 (Bankr.S.D.Ohio 1992). Other courts have reached this same conclusion while not directly relying on the Supreme Court's ruling in *Kovacs*. *See Creator's Way Associated Labels, Inc. v. Mitchell*, 249 B.R. 55 (Bankr.S.D.N.Y. 2000) (discussing whether entertainer's breach of exclusive performance obligation is a dischargeable claim turns on whether the breach gives rise to a right to payment); *The R.J. Carbone Co. v. Nyren (In re Nyren)*, 187 B.R. 424 (Bankr.D.Conn. 1995) (holding that breach of covenant not to compete in employment contract is not a dischargeable claim where the only remedy sought is injunctive relief); *In re Peltz*, 55 B.R. 336 (Bankr.M.D.Fla.1985). Thus, in the context of a chapter 7 bankruptcy, the discharge injunction will not affect the enforcement of a party's injunctive breach remedy on a debtor's covenant not to compete where compliance requires simple abstention from conduct and does not give rise to monetary payment. *See id.* at 338 ("Injunctive relief constitutes a claim under § 101([5])(B) if the injunction gives rise to a right to payment...[and]...injunctive relief sought from a breach of a covenant not to compete is not a claim

under Code § 101([5])(B) and cannot be discharged...").

■ In the instant case, Maggio seeks relief from the discharge injunction in order to "pursue injunctive relief and other relief for breach of contract and possibly fraud against the Debtor Annabel in State Court..." Maggio Motion, at ¶ 10. It is clear that Maggio is entitled *only* to limited relief from the discharge injunction in order to pursue injunctive relief in state court. The state court should determine whether the covenant not to compete in the Annabel–Maggio Contract is valid and enforceable under New York State law and, if so, whether the Debtor breached the same. *See May*, 141 B.R. at 945. Any monetary damages awarded to Maggio in state court arising from the Debtor's breach of the covenant not to compete were discharged pursuant to the August 2, 2000 Order of Discharge. *See id.* However, if the state court issues an injunction in favor of Maggio pursuant to the covenant not to compete, the same shall not be affected by the Order of Discharge issued by this Court. The Court is cognizant that if the Debtor is enjoined in state court from the practice of chiropractic pursuant to the terms of the covenant, that costs incidental to the Debtor's re-establishment of a chiropractic practice elsewhere may result. The Court is not obliged to consider such costs in this case since compliance with the covenant itself would require nothing more of the Debtor than abstention from the practice of chiropractic within a 20 mile radius of the Lakeside Family Chiropractic for two years. *See* Maggio Motion, Exhibit A, at 2. In this regard, the expenditure of money is not required to comply with the affirmative obligations under the covenant. *See May*, 141 B.R. at 943.

As a final note, the Court points out that its ruling herein is limited to the issues and facts as they arose in this chapter 7 case. The applicability of this narrow holding should not be misconstrued as encompassing the concerns present in a chapter 11 or a chapter 13 case where the Court would be required to consider the effect of the covenant not to compete on a debtor's ability to reorganize. *See The R.J. Carbone Co.*, 187 B.R. at 425 (reasoning that concerns such as prejudice to the debtor's estate in allowing the enforcement of a covenant not to compete are moot in a chapter 7 case since post-petition earnings are not property of the estate.); *In re Cox*, 53 B.R. at 832 (stating in dicta that the effect of compliance with covenant not to compete on debtor's post-petition earnings is not a consideration in a chapter 7 bankruptcy).

By virtue of the foregoing, it is hereby

ORDERED, that Maggio is granted limited relief from the discharge injunction imposed pursuant to Code § 524 to pursue injunctive relief against the Debtor in a state court action; and it is further

ORDERED, that Maggio may not seek or obtain any other relief of a legal or equitable nature, monetary or otherwise, in the state court action.